UNITED STATES of America,
Plaintiff–Appellee,

v.

Luis RODRIGUEZ–SUAREZ,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Vertulia PIERRE, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Mario Enrique CAMERON,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Antoinier DURAND,
Defendant–Appellant,

UNITED STATES of America,
Plaintiff–Appellee,

v.

Leonardo BURGOS,
Defendant–Appellant.

Nos. 87–5469, 87–5470, 87–5510,
87–5540 and 87–5842.

United States Court of Appeals,
Eleventh Circuit.

Sept. 28, 1988.

Richard Klugh, Charles Wishna, Asst. Federal Public Defenders, Miami, Fla., for Rodriguez–Suarez.

John J. O'Sullivan, Linda C. Hertz, Harriett R. Galvin, Julia Paylor, Jonathan B. Goodman, Mary K. Butler, Terry L. Lindsey, Asst. U.S. Attys., Dexter Lehtinen, U.S. Atty., Miami, Fla., for U.S.

Lisa A. Rosenthal, Charles Wishna, Asst. Federal Public Defenders, Miami, Fla., for Pierre.

Lisa Rosenthal, Charles Wishna, Asst. Federal Public Defenders, Miami, Fla., for Cameron.

Richard C. Klugh, Jr., Charles Wishna, Asst. Federal Public Defenders, Miami, Fla., for Durand.

Jon Allen May, Miami, Fla., for Burgos.

Before HILL and ANDERSON, Circuit Judges, and THOMAS *, Senior District Judge.

HILL, Circuit Judge:

In separate cases, each appellant either pleaded guilty or were convicted of possession with intent to distribute or importation of more than 500 grams of cocaine. The

---

* Honorable Daniel H. Thomas, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

cases are consolidated because they all raise the issue of the constitutionality of the mandatory minimum sentencing provisions of the Anti–Drug Abuse Act, 21 U.S.C. §§ 960(b)(2)(B) and 841(b)(1)(B). Appellants also raise several issues peculiar to their individual cases. We affirm.

## I. MANDATORY MINIMUM SENTENCING

The common issues related to the interpretation and constitutionality of the mandatory minimum sentences may be resolved without focusing upon the facts of the individual cases because the sentencing provisions apply only when the defendant has first been found guilty. 21 U.S.C. §§ 841, 960. The appellants challenge the mandatory sentence provisions in a variety of ways. We conclude that several of the issues are controlled by recent precedent, that the defendants lack standing to raise several other claims, and that the remaining claims are without merit.

The appellants first challenge the constitutionality of mandatory minimum sentences under the due process and equal protection components of the Fifth Amendment, the Eighth Amendment, and the separation of powers elements of the United States Constitution. This court considered and rejected these challenges in *United States v. Holmes*, 838 F.2d 1175 (11th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 2829, 100 L.Ed.2d 930 (1988). With respect to the bulk of the appellants' claims regarding the imposition of mandatory minimum sentences, we find *Holmes* controlling, and we need not address the issues further.

■ One of the appellants, Leonardo Burgos, raises a new claim which involves the legislative history of the Anti–Drug Abuse Act. He argues that the legislative history of the Act reveals that Congress did not intend to impose mandatory minimum sentences on "mere couriers." Instead, he claims that Congress only intended to impose such sentences on drug "kingpins" and "middle-level dealers." Burgos asserts that he was a mere courier to whom the provisions were not intended to apply.[1] Additionally, he argues that the sentencing provisions violate due process because the classification of sentences based solely upon the quantity of drugs involved is not rationally related to the purpose of imposing stiffer sentences on kingpins and middle-level dealers. Neither argument has merit.

As an initial matter, we note that the language of the mandatory minimum sentence provisions is precise, clear and unambiguous. The statute imposes minimum sentences based upon the amount of drugs involved, and the language unquestionably applies to Burgos. The law is clear that the plain language of a statute controls the determination of the purpose of the provision. *See United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed. 2d 246 (1981). While we may look to the legislative history in such cases, "we do so with the recognition that only the most extraordinary showing of contrary intentions from those data would justify a limitation on the 'plain meaning' of the statutory language." *Garcia v. United States*, 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984). In the present case, the purpose of the provisions is controlled by the clear language of the statute itself because there has been no extraordinary showing of contrary intentions in the legislative history.

Burgos points to a statement from the floor of the Senate by one of the bill's sponsors, Senator Byrd, in which the Senator indicated that the law would provide mandatory minimum sentences for middle-level dealers and kingpins. *See* 132 Cong. Rec. S14301 (daily ed. Sept. 30, 1986). Burgos argues that this demonstrates Congress' intent that the minimum sentence

---

1. At the outset, we express some disagreement with the appellant's characterization of his role as that of a *mere* courier. No drug operation can survive without the services of such individuals. While couriers may not share the same authority as others involved in a drug operation, they are nonetheless indispensable to the success of the operation, and thus Congress could certainly conclude that they are an appropriate target in the effort to halt the flow of illegal drugs into and around the nation.

provisions would apply *only* to middle-level dealers and kingpins, and he claims that those terms were to be defined by reference to a defendant's role in the hierarchy rather than simply by reference to the quantity of drugs involved. Such broad statements from the Senate floor during Congressional debate are insufficient to supplant the intent reflected in the unambiguous and precise language of the provisions involved here.[2] This showing of legislative history is neither extraordinary nor contrary to the meaning expressed in the statute itself. Congress was free to define the vague terms "kingpin" and "middle-level dealer" in any reasonable way which it deemed appropriate, and it was free to include in those definitions individuals convicted of importing or possessing with intent to distribute large amounts of cocaine. Moreover, even if the primary purpose of the law was to provide stiffer sentences for defendants who were higher up in the hierarchy, the statute itself is not limited to such individuals, and it would not serve the general purpose of the statute to impose such a limitation on the plain language of the law. *See United States v. Albertini,* 472 U.S. 675, 681, 105 S.Ct. 2897, 2902, 86 L.Ed.2d 536 (1985) (Portions of the legislative history "indicate that the primary purpose of § 1382 was to punish spies and panderers for repeated entry into military installations. Nonetheless, § 1382 by its terms is not limited to such persons, and such a restrictive reading of the statute would frustrate its more general purpose...."). In sum, we find that the scope and purpose of the mandatory minimum sentence provisions is controlled by the plain language of the statute itself. The provision clearly applies to appellant Burgos.[3]

■ The appellants next raise a variety of claims involving the substantial assistance provision, 18 U.S.C. § 3553(e), which allows the court to impose a sentence below the statutory minimum, upon motion of the government, in order to reflect the defendant's assistance in the investigation or prosecution of others. We conclude that the appellants lack standing to raise the issues concerning the application or validity of the substantial assistance provision in this appeal.

The mandatory minimum sentence provisions contained in the Anti–Drug Abuse Act became effective on October 27, 1986, but the substantial assistance provision did not become effective until November 1, 1987. All of the defendants in this case were convicted and sentenced during this gap. While the appellants assert that Congress intended for the provisions to become effective on the same date, the effective dates of the provisions are clear and the legislative history does not suggest that Congress intended that the applicability of the minimum sentence provisions would be dependent upon the availability of the substantial assistance provision. Moreover, this court has recently upheld the constitutionality of the gap itself. *See United States v. Sorondo,* 845 F.2d 945, 947–48 (11th Cir.1988). Thus, the substantial assistance provision did not apply to the appellants at the time of their sentencing, and their sentences could not have been affected by the validity or invalidity of that provision. As such, they lack standing to challenge the provision in this appeal. *See United States v. Muniz–Zacca,* No. 87–6061, slip op. at 3–4 (11th Cir. July 22, 1988) [854 F.2d 1324 (table) ] ("Because appellant has thus shown no injury traceable to 18 U.S.C. § 3553(e) and no injury redressable by the acceptance of the proposition he urges, he is without standing on this point."); *Church of Scientology Flag Service Org. v. City of Clearwater,* 777 F.2d

---

2. With respect to comments made from the floor of the Congress, the Supreme Court has stated: "[w]e have eschewed reliance on the passing comments of one Member ... and casual statements from the floor debates." *Garcia,* 469 U.S. at 76, 105 S.Ct. at 483 (citation omitted).

3. Given our conclusion that the purpose of the provisions is found in the plain language of the statute, Burgos' further argument that the provisions are not rationally related to a legitimate purpose is foreclosed by our prior decisions. *See Holmes,* 838 F.2d at 1177–78; *United States v. Solomon,* 848 F.2d 156, 157 (11th Cir.1988); *United States v. Murillo–Guzman,* 845 F.2d 314, 315 (11th Cir.1988).

598, 606 (11th Cir.1985) (Standing requires "actual or threatened injury, fairly traceable to the challenged action, and redressable by a favorable decision."), *cert. denied,* 476 U.S. 1116, 106 S.Ct. 1973, 90 L.Ed.2d 656 (1986).[4]

## II. MAGISTRATE SUPERVISION FOR JURY SELECTION

■ The appellant, Louis Rodriguez–Suarez, challenges the district court's designation of a United States Magistrate to preside over jury selection in his case. He contends that this delegation was improper under the Magistrates Act, 28 U.S.C. § 636(b), and Article III of the federal Constitution. On appeal, however, Rodriguez–Suarez does not offer any indication that he was affected in any way by the fact that a magistrate presided over the jury selection process. He points to no ruling by the magistrate with which he was displeased, nor does he suggest how the jury which was selected differed from the jury which might have been selected if the district court judge had presided over the process. In these circumstances, we need not reach the question of whether the magistrate's supervision over jury selection was error because any error which may have occurred was harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967) (harmless beyond a reasonable doubt standard applicable to federal constitutional errors).

## III. PROSECUTORIAL COMMENTS AND JURY INSTRUCTIONS

A jury convicted appellant, Vertulia Pierre, for importing cocaine into the United States from Haiti. In closing argument, the prosecutor made a reference to Haiti's status as a source country for cocaine. The prosecutor also stated that Pierre received payment for her role, a fact which

was not in evidence. Pierre challenges the appropriateness of each remark and, in addition, challenges the district court's handling of jury instructions concerning deliberate ignorance and knowledge of substance.

■ Prosecutorial misconduct during closing argument does not require reversal unless the comments are both improper and prejudicial to a substantial right of the defendant. *United States v. Bascaro,* 742 F.2d 1335, 1353 (11th Cir.1984), *cert. denied,* 472 U.S. 1017, 105 S.Ct. 3476, 87 L.Ed.2d 613 (1985). The prosecutor's comment that Haiti was a source country for cocaine came in response to an earlier statement by Pierre's lawyer to the effect that Haiti was a major drug trafficking source. Immediately, the court sustained an objection to the prosecutor's remark and the court instructed the jury not to consider the prosecutor's remarks as evidence. This comment did not prejudice Pierre's rights. Similarly, the prosecutor's comment regarding payment to Pierre did not constitute reversible error. The prosecutor made this comment in the context of a hypothetical which came in response to the remarks of Pierre's lawyer to the effect that Pierre did not dress like a drug dealer and could not afford a lawyer. The prosecutor stated that Pierre may not have been paid as much as a middle man, but the level of payment did not preclude her status as a drug dealer. We hold that this statement did not prejudice Pierre's substantial rights.

■ The district court gave the jury a deliberate ignorance instruction as follows: "if you find from all the evidence beyond a reasonable doubt that the defendant believed she possessed cocaine and deliberately and consciously tried to avoid learning that there was cocaine in the package she possessed ... you may treat such deliber-

4. Congress subsequently eliminated the gap through the Sentencing Act of 1987, Pub.L. No. 100–182, 101 Stat. 1266 (1987). However, the appellants were convicted and sentenced prior to the removal of the gap. Therefore, the sentences from which they appeal were proper according to the law as it existed at the time the

judgment was entered, and we may not alter these properly entered sentences in this appeal. We note, however, that our decision today is without prejudice to any other post-sentencing or post-judgment remedies available to the appellants.

ate avoidance of positive knowledge as the equivalent of knowledge." Before the court gave this instruction, the prosecutor told the jury that "[t]he court will also instruct you that you can determine that the defendant in this case possibly deliberately closed her eyes to what she had reason to believe was cocaine." Although Pierre did not object at trial, she now complains that the word "possibly" misled the jury. Due to the failure to object in the district court, we review this issue under the plain error standard. Fed.R.Crim.P. 52(b). The prosecutor's comment merely suggested that the jury may "possibly" find that Pierre had reason to believe that cocaine was the substance which she imported. We hold that the prosecutor's comment did not constitute plain error.

■ Finally, Pierre challenges the district court's refusal to give an additional instruction on "knowledge of substance." Specifically, Pierre requested an instruction which she argues was necessary to inform the jury that if she thought the packages she carried contained anything other than cocaine, such as marijuana, she must be found not guilty. The district court declined to give this instruction, finding that the instruction it intended to give adequately covered the law on knowledge of substance. The court indicated that the defense was free to make its more specific point in argument to the jury. Pierre argues that it was error to refuse the additional instruction.

The district court has broad discretion in formulating jury instructions so long as the charge accurately reflects the law and facts. See *United States v. Silverman*, 745 F.2d 1386, 1395 (11th Cir.1984); *United States v. Sorrells*, 714 F.2d 1522, 1531 (11th Cir.1983). The trial judge is not obligated to give a requested instruction if the matter is adequately covered by other instructions, *Sorrells*, 714 F.2d at 1532, and the judge may refuse confusing or cumulative instructions. *United States v. Gaines*, 690 F.2d 849, 855–56 (11th Cir.1982). In this case, the court gave the following instruction:

[a]s to Count 1, Title 21, United States Code Section 952(a), makes it a Federal crime or offense for anyone to knowingly import any controlled substance into the United States. Cocaine is a controlled substance within the meaning of the law.

The defendant can be found guilty of that offense only if all of the following facts are proved beyond a reasonable doubt:

First, that the defendant imported cocaine into the United States from a place outside thereof as charged, and second, that the defendant did so knowingly and willfully.

To import a substance means to bring or transport that substance into the United States from some place outside the United States.

As to Count 2, 21 U.S.C. § 841(a)(1), makes it a Federal crime or offense for anyone to possess a controlled substance with intent to distribute it.

Cocaine is a controlled substance within the meaning of the law. The defendant can be found guilty of that offense only if all of the following facts are proved beyond a reasonable doubt: First, that the defendant knowingly and willfully possessed cocaine as charged; and, second, that she possessed the substance with the intent to distribute it.

(R3–188–89) This instruction, particularly when combined with the court's instruction regarding deliberate ignorance, accurately and completely stated the law. As such, the district court's refusal to provide an additional instruction was proper.

## IV.  CONCLUSION

For the reasons discussed above, the convictions and sentences of the appellants are

AFFIRMED.