**Ray TENG, Plaintiff,**

v.

**METROPOLITAN RETAIL RECOVERY INC. T/A Metropolitan & Associates; Carlos Zapata; Alexander Soto; "Willie Davis" and "John Doe"; being natural persons whose first and last names may be fictitious, being employees of Metropolitan Retail Recovery Inc.; and Citibank, N.A. a national banking association and division of Citicorp., Defendants.**

No. CV 93–0293.

United States District Court, E.D. New York.

April 21, 1994.

---

  \*   \*   \*   \*   \*   \*

  Shirley F. Gajewski, Great Neck, NY (Michael Shichman, of counsel), for plaintiff.

Cohen & Krassner, New York City, by (Mark Krassner, of counsel), for defendants.

### MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

This is an action by a consumer against a corporate debt collection agency, its employees, and their principal, Citibank, N.A. under the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692o.

## THE TRIAL

The plaintiff RAY TENG ("plaintiff" or "Teng") came to the United States in 1980 from Beijing, China. He is a lawful permanent resident of the United States. In the early 1980s the plaintiff opened three accounts, including a "checking plus" account at Citibank N.A. ("Citibank"). He also received a personal loan from Citibank. The plaintiff made payments to Citibank on his various obligations, including covered overdrafts, until 1989. In that year, the plaintiff lost his full-time job and fell behind in his payments to Citibank. At one time he was living with his mother.

Teng testified that he first received a communication from the defendant Metropolitan Retail Recovery Inc. ("Met Retail") "some time in the late fall of 1991" when he was in his mother's home in Flushing, New York. At that time he owed Citibank approximately $5000. Teng testified that a man identified himself as "Willie Davis of the City Marshal's office." This person told him that there was a judgment against him and that he was ready to "pop a lock" on his mother's apartment, remove all the household furniture, put it in storage for thirty days and "auction it off." Teng then testified that he was given the 212 telephone number of Met Retail. When Teng called the number he was told that there was a judgment against him and that he had better make the payments due.

Teng then made an arrangement to repay the debt. He paid $1500 on January 16, 1992 and $1100 on March 12, 1992, leaving a balance at that time of $3251.75 as indicated on a Met Retail payment card (Plaintiff's Exh. 3). Teng made two additional payments of $100.00 each on April 15, 1992 and May 23, 1992 and then he stopped making any payments. If the Met Retail payment card is accurate, there would have been a balance of $3051.75 due as of May 23, 1992, together with any interest due and owing, with no payments made by Teng after that date.

JIMMY CHENG is the owner of the New Hunan Taste Chinese Restaurant in Valley Stream, New York. On Thursday, September 10, 1992, the plaintiff Ray Teng was an employee at the restaurant but did not work that day. On that date, September 10, 1992, at approximately 5:30 p.m., Cheng received a phone call from someone who asked if Mr. Teng was there. Cheng responded that this was his day off. The caller asked for the plaintiff's home telephone number. The caller further said that he was calling from a telegram company in Maryland and "Mr. Teng had a family crisis overseas." Hearing this dire news, Cheng gave the caller the plaintiff's home telephone number. When Cheng asked the caller for the name of the telegram company, he said "That's not important." Cheng hung up, called Mr. Teng and left a message on his answering device that it "was very important, call me back."

Apparently an earlier call had been made by a representative of the defendant to the restaurant at 2:22 p.m. The times of this and other telephone calls are set forth in a record of telephone calls made from the defendant Met Retail's office that day (Plaintiff's Exh. 1). The call referred to above was actually the second call made to the New Hunan Taste Restaurant, which was recorded as being made at 5:34 p.m. and having a duration of four minutes.

On the same date at 5:46 p.m., Cheng received a second phone call from the same person. The caller said that he would like to call Mr. Teng himself and that there is "really an emergency—a family crisis."

On that same date, Thursday, September 10, 1992, Teng resided at 287 West Merrick Road in Valley Stream, New York. He testified that he lived at that address since May 1992 and had a listed telephone number. He did not work that day. He returned to his home at 6:00 p.m. and found a message on his answering machine from his employer Cheng saying that there was an "emergency and it was urgent to call him." He called Cheng who told him that "there was an emergency telegram; the telephone company from Maryland was looking for him; there was a family crisis in Beijing." Hearing this news, the plaintiff thought the call was related to his father-in-law who he knew was in a hospital in Beijing at that time, apparently suffering from a serious illness. He told this news about her father to his wife who began to cry. Teng did not know what to do. He and his wife waited for another phone call

that never came. Finally at about 6:30 p.m., Teng called the hospital in Beijing where his father-in-law was a patient. He spoke to a nurse who did not know his father-in-law's condition. He made two calls to Beijing, at 6:37 p.m. and 6:46 p.m. (see Plaintiff's Exh. 5). Finally, his mother-in-law called him from China between 9:00 p.m. and 10:00 p.m. that evening. She told him that his father-in-law was fine and stable, even though he was still very sick and in the hospital.

Teng further testified that, that same evening, September 10, 1992, at about 7:00 p.m., he got a phone call from a man who identified himself as Willie Davis from the City Marshal's office. This man told him that there was a judgment against him and he was going to "pop a lock" on his apartment and take away his furniture. The man told him to call Met Retail at a 212 telephone number.

Teng then called Met Retail and spoke to a John Sierra who told him there was a judgment against him and that he would have to come up with payment in full or the next day the marshal would "pop a lock" and take his furniture. This call was listed in Plaintiff's Exh. 1 at page 5, as having been made at 6:55 p.m.

Teng then consulted attorney Shirley Gajewski. It was ascertained by her office that no judgment was ever rendered against him by Citibank. This was corroborated by the investigatory work of Joseph Chiofalo, a legal assistant for Ms. Gajewski. Chiofalo called Met Retail and spoke to a John Allen who told him the information with regard to the alleged "judgment" against Teng "was not available." Allen allegedly also referred to a City Marshal picking up Teng's furniture. Chiofalo then called Citibank, and was referred to its Pelham, New York office and to a "Mrs. Harry" who advised him that there was no judgment filed against him. Chiofalo testified that Citibank fully cooperated with him and assisted in his investigation.

CARLOS ZAPATA, the President and sole owner of the defendant Metropolitan Retail Recovery, Inc. testified that his company was a third debt collection agency. That meant that his agency was retained only after two prior debt collection agencies were unsuc-cessful in obtaining payment from the debtor. He and his debt collectors commonly use aliases when communicating with debtors. He himself spot checked his collectors' calls. Zapata also did some collection work himself and used the alias "John Sierra." His manager is Alexander Soto who used the alias "John Allen."

Zapata testified that he never heard anyone in his office use the alias of Willie Davis.

Citibank is the major client of Met Retail. There is a written agreement between Citibank and Met Retail, dated March 14, 1991 (Defendants' Exh. A). With regard to the relationship between Met Retail and Citibank, Zapata testified that "no one from Citibank gets involved in what Met Retail does" and that "we are completely independent of Citibank."

Zapata is familiar with the Teng account. Introduced in evidence is the original ledger card for the Teng account (Defendant's Exh. B). The date of referral, typed or computer generated on the ledger card, was December 23, 1991. The date of the first payment collected was January 16, 1992.

As further evidence of the date the defendant Met Retail first received the plaintiff's account, the defendant introduced its "collection history" sheets (Defendants' Exh. C). The first entry on these sheets is December 27, 1991. Also in evidence are the records from the prior collection agency which seems to indicate that the plaintiff's account was referred to defendant Met Retail by Citibank on December 23, 1991. Further, there is a Trans Union Consumer Credit Report in evidence (Defendants' Exh. E), dated January 2, 1992. All of this documentary evidence supports the defendant Met Retail's contention that it was retained for the first time by Citibank to collect the plaintiff's loan on or after December 23, 1991 and that the first collection work done by defendant Met Retail was on December 27, 1991.

Zapata testified that the plaintiff's place of business and his home telephone number was on the ledger card, so that there was no reason to use a ruse to obtain this information. However, the Court notes that this data was not typed or computer-generated

on the ledger. This information was written on the card by handwriting in ink.

Zapata conceded that the FDCPA restricts collection telephone calls to two a day. Yet the defendant's telephone invoice (Plaintiff's Exh. 1) shows that five calls were made from Met Retail on September 10, 1992. The Court does not credit Zapata's explanation that five calls had to be made because of "communication problems," especially with regard to a Chinese Restaurant which probably has a "take-out" business.

ALEXANDER SOTO has been employed by defendant Met Retail for four years. He is the defendant's manager and supervises all collectors. Soto uses the alias "John Allen." He is familiar with all the defendant's employees and testified that the name "WILLIE DAVIS" is unknown to him.

Soto works on some accounts himself and testified that on September 10, 1992 he called the plaintiff at his place of business at a Chinese Restaurant. He made two or three calls to the restaurant that day. Soto testified that he spoke to an unknown man at the restaurant each time who hung up. Soto also conceded that a total of five phone calls were made to the plaintiff's place of business and residence that day. Soto also stated that there was a requirement that written notice must be sent to a debtor within five days of a telephone call. He testified that he did send such notice but has no copies.

Soto testified that he spoke to hundreds and maybe thousands of debtors since September 10, 1992, and it was obvious to the Court that he remembered very little about this account.

## DISCUSSION

The FDCPA was enacted "to protect consumers from unscrupulous debt collection practices ... without imposing unnecessary restrictions on ethical debt collectors." S.Rep. No. 382, 95th Cong., 1st Sess. 1–2, *reprinted in* 1977 U.S.Code Cong. & Admin.News 1695, 1696.

The FDCPA establishes a general prohibition against the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e. Among the sixteen subsections of § 1692e, which is a non-exhaustive list of violative practices, are the following:

"(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(11) Except as otherwise provided for communications to acquire location information under section 1692b of this title, the failure to disclose clearly in all communications made to collect a debt or to obtain information about a consumer, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose."

■■■ A single violation of section 1692e is sufficient to establish liability under the FDCPA. A false, deceptive or misleading representation in a telephone call by a debt collector is actionable. *Austin v. Great Lakes Collection Bureau, Inc.*, 834 F.Supp. 557 (D.Conn.1993). The test for determining whether a communication violates section 1692e is an objective standard based on the "least sophisticated consumer." *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60 (2d Cir.1993); *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir.1993). This standard both protects even the naive and trusting consumer and protects debt collectors from bizarre interpretation of collection communications. *Clomon, supra*, at 1320.

It has been held that the use of *any* false, deceptive or misleading representation in a collection telephone call violates section 1692e, regardless of whether the representation in question violates a particular subsection of the provision. Thus, there is a "general ban" of any false, deceptive or misleading representations. *Clomon, supra*, at 1320.

## I. *The Liability of Defendant Citibank*

■■■ Liability under the FDCPA is on the "debt collector." A debt collector is defined in the statute in section 1692a, as follows:

"§ 1692a. **Definitions**

As used in this subchapter—

(6) The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any

business the principal purpose of which is the collection of any debts, or *who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.* . . . This term does not include—

(A) any officer or employee of a *creditor* while in the name of the creditor, collection debts for such creditor; . . ." (emphasis supplied).

This Court is of the view that the defendant Citibank is not a "debt collector" within the purview of the FDCPA. First, the definition in the statute expressly defines a "debt collector" as one who uses interstate commerce or the mails in a principal purpose to collect debts or one who regularly collects debts "owed or due another." Clearly, the statute is aimed at persons who are in the business of collecting debts for other persons, namely for creditors. In this case, the creditor is Citibank and the "debt collector" is Met Retail and its employees.

Second, it was the apparent congressional intent to regulate persons and firms who are in the business of professional debt collections. The FDCPA was enacted "to protect consumers from unscrupulous debt collection practices." The abuses familiar to all by promiscuous and reckless debt collectors are the target of this legislation.

Third, the facts in this case indicate that Citibank is, in fact, an independent contractor and is insulated from liability by the common law. In this regard, the Court must consider but is not solely bound by the provision in section 10 of the contract between Met Retail and Citibank (Defendants' Exh. A), which provides:

"*SECTION 10. INDEPENDENT CONTRACTOR*

Agency is retained by Creditor solely for the purpose and to the extent set forth in this Agreement. Agency's relation to Creditor, during the period or periods of service hereunder, shall be that of an independent contractor and shall not, at any time, be that of a co-venturer, agent, employee, or representative of Creditor. Creditor shall not prescribe the method or manner of Agency collection efforts. Agency shall make no expressed or implied

representation to debtors that it occupies any relationship to Creditor other than that of an independent contractor. Agency shall use its own name and letterhead in all contacts and transactions with debtors and other persons that may in any manner be concerned with this Agreement. Persons utilized by Agency in furtherance of this Agreement shall be employees of Agency and shall not be represented or deemed to be the employees of Creditor in any manner whatsoever."

The Court must also consider, but is not solely bound by the reporting and payment provisions in the contract. However, such provisions do not convert Citibank from a creditor into a debt collector. In this case Citibank is the creditor and Met Retail and its employees are the "debt collectors."

Whether a person or a firm is an independent contractor under the provisions of the FDCPA is a question of federal law. *Logue v. United States,* 412 U.S. 521, 528, 93 S.Ct. 2215, 2219, 37 L.Ed.2d 121 (1973). The issue is whether the creditor, here Citibank, had the authority "to control the detailed physical performance of the contract" *Logue,* 412 U.S. at 527, 528, 93 S.Ct. at 2219, 2219; see also *U.S. v. Orleans,* 425 U.S. 807, 814, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976); Restatement (Second) of Agency § 2. (See also *Leone v. U.S.,* 910 F.2d 46 (2d Cir.1990) *cert. den.* 499 U.S. 905, 111 S.Ct. 1103, 113 L.Ed.2d 213 (1991)).

Similar to the federal concept of an independent contractor is the New York common law doctrine, in that "an independent contractor is a person who contracts with another to do something for him but is not controlled by the other or subject to the other's right to control with respect to his physical conduct in the performance of the undertaking" *E.B.A. Wholesale Corp. v. S.B. Mechanical Corp.,* 127 A.D.2d 737, 512 N.Y.S.2d 130 (2d Dept.1986); Restatement Agency 2d § 2(3).

In *Kizer v. Finance America Credit Corp.,* 454 F.Supp. 937 (N.D.Miss.1978), it was held that "it clearly appears that the 'debt collectors' are those who regularly collect debts for others and not creditors of consumers."

Thus, when Apple Bank attempted to collect a debt owed to itself, it was held not to be a "debt collector." *Mendez v. Apple Bank for Savings,* 143 Misc.2d 915, 541 N.Y.S.2d 920 (Civ.Ct.N.Y.Co.1989). In *Perry v. Stewart Title Co.,* 756 F.2d 1197 (5th Cir.1985) it was stated that "the legislation history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors."

In this case, there was no evidence adduced that Met Retail was in any way subject to Citibank's control with regard to its conduct in the actual performance of the debt collection work. Since Met Retail was an independent contractor in this situation and Citibank is not a "debt collector" within the purview of the statute, the plaintiff has failed to establish any liability against the defendant Citibank under the FDCPA, and the complaint is dismissed against the defendant Citibank.

## II. *The Liability of Defendants Met Retail, Carlos Zapata and Alexander Soto*

■ The defendants in this case include Met Retail and Zapata and Soto, respectively the President and Manager of Met Retail, both being employees of Met Retail. Zapata and Soto are being sued individually. There is a paucity of case law with regard to the liability of an employee of a "debt collector." However, in the few cases that tangentially touch this subject (*e.g. Cirkot v. Diversified Financial Systems, Inc.,* 839 F.Supp. 941 (D.Conn.1993); *Kempf v. Famous Barr Co. & Wilson,* 676 F.Supp. 937 (E.D.Mo.1988)), it appears that such an employee is liable on several grounds. First, each employee is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts or who regularly collects or attempts to collect .... debts owed or due ... another...."

Second, Zapata and Soto are each affirmative actors and tortfeasors, who actually made the actionable phone calls, and would be personally liable if this was a tortious cause of action. Thus, the defendants Met Retail, Zapata and Soto are jointly and severally liable for the damages incurred by the plaintiff, if there is liability.

With regard to these three defendants, Met Retail, Zapata and Soto, who are all "debt collectors" subject to the provisions of the FDCPA, the Court makes the following findings:

■ 1. The plaintiff failed to establish, by a preponderance of the credible evidence, that the telephone calls made by "Willie Davis" in the late fall of 1991 were made by an employee of the defendant Met Retail.

On the contrary, the proof establishes that Met Retail was the third collection agency retained in this matter, and the documentary evidence clearly shows that the earliest date that Citibank referred this account to Met Retail was December 23, 1991.

In addition, the Court notes that the complaint fails to set forth any allegations about these 1991 telephone calls. The telephone calls relied upon in the complaint refer to the September 10, 1992 cluster of calls.

2. The plaintiff did prove, by a preponderance of the credible evidence, that five telephone calls were made by an employee of the defendant Met Retail to his place of business and residence, within a four and one-half hour period on September 10, 1992.

3. The plaintiff proved that the maker of the telephone calls stated that there was an "emergency family crisis overseas" and attempted to obtain collection information about the plaintiff.

4. The plaintiff proved that this repeated message, namely, that there was an "emergency family crisis overseas," was a false representation and a deceptive means to attempt to collect a debt and/or to obtain information concerning a consumer, namely, the plaintiff, Ray Teng.

5. The plaintiff established that on September 10, 1992, at approximately 7:00 p.m., he received a phone call from a man who identified himself as Willie Davis from the City Marshal's office, who told him that there was a judgment entered against him and that the Marshal was going to "pop a lock" and remove his furniture.

68

6. The plaintiff established that he immediately called Met Retail and spoke to "John Sierra," who concededly is the defendant Carlos Zapata, and told him about the call from Willie Davis, the City Marshal. In that conversation, Sierra told him to "come up with the full payment ... or the City Marshal will 'pop a lock' and take your furniture."

7. The plaintiff established that in both of these telephone calls, as described in findings numbered 5 and 6, there were false representations and deceptive means communicated to him to attempt to collect a debt.

8. That there was no judgment rendered against the plaintiff during this time period.

9. That the defendant Carlos Zapata was, in fact, the "John Sierra" who made the false and deceptive representations set forth in finding number 6.

10. That the defendant Alexander Soto made the three telephone calls to Cheng at the New Hunan Chinese Restaurant on September 10, 1992, and in those telephone calls, he made the false representations and used the deceptive means described above.

11. That as a result of these telephone calls the plaintiff Ray Teng suffered some emotional distress.

### III. *Damages*

■ The FDCPA provides that any debt collector who fails to comply with any provision of the statute is liable to such person, (15 U.S.C. § 1692k). The statute further provides that upon a finding of liability, a Court may award an individual plaintiff certain damages, as follows:

"§ 1692k. **Civil liability**

#### Amount of damages

(a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of —

(1) any actual damage sustained by such person as a result of such failure;

(2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000;

. . . .

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. . . .

#### Factors considered by court

(b) In determining the amount of liability in any action under subsection (a) of this section, the court shall consider, among other relevant factors—

(1) in any individual action under subsection (a)(2)(A) of this section, the frequency and persistence of noncompliance by the debt collector, the nature of such non-compliance, and the extent to which such non-compliance was intentional; ..."

### A. *Actual Damages—Emotional Distress*

In this case, the only actual damage claimed by the plaintiff is emotional distress. The plaintiff contends that he was rendered upset, nervous, and mentally distressed by the false representation that there was an emergency family crisis in China and that the Marshal was about to execute on a judgment, "pop the lock" to his home and remove his furniture.

The few courts that have addressed the issue of emotional distress as a measure of damages in a FDCPA case, have determined that such damages are recoverable. In *Crossley v. Lieberman,* 90 B.R. 682 (E.D.Pa. 1988), *aff'd,* 868 F.2d 566 (3d Cir.1989), it was held that:

"We believe that emotional distress as a component of damages here, specifically allowed under a statute such as 15 U.S.C. § 1692(a), is analogous to emotional distress as a component of damages under 11 U.S.C. § 362(h), *see, In re Wagner; Wagner v. Ivory,* 74 B.R. 898, 905 (Bankr. E.D.Pa.1987), or actual damages under the Truth-in-Lending Act or unfair trade practices acts. *See In re Russell.* . . . [,72 B.R. 855, 861–64, 870–72 (Bankr.E.D.Pa.1987) ] Similarly, we believe that violations of the

FDCPA, by their very nature, (e.g., abusive, deceptive or unfair debt collection practices), are those kinds of actions which may be expected to cause emotional distress and, therefore, the availability of damages for such distress is of paramount importance. We find additional support for our analysis in the introductory statement of 'Congressional findings and declaration of purpose' of § 1692:

(a) There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss 'of jobs, and to invasions of individual privacy."

In *Smith v. Law Offices of Mitchell N. Kay,* 124 B.R. 182 (D.Del.1991), in an FDCPA case, it was held that actual damages for emotional distress could be proved independently of state law requirements as to tort actions. In *Smith* a jury award of $15,000 in actual damages for emotional distress was held to be grossly excessive and reduced to the sum of $3,000. Similarly, in *Donahue v. NFS Inc.,* 781 F.Supp. 188 (W.D.N.Y.1991) it was held that the "right to recovery of actual damages under the FDCPA, predicated on claimed emotional distress, remains independent of her right, if any, to recover damages for emotional distress under state law."

■ This Court agrees that emotional distress is compensable as actual damages in a FDCPA case. The wrong sought to be punished by this statute is similar in nature to a tort cause of action based on outrageous and reckless conduct and is the type of wrong in which damages for emotional distress have been traditionally permitted.

**B.   *Additional Statutory Damages***

The decision as to whether to award "additional damages" and the size of such an award is committed to the sound discretion of the district court. Whether to award additional damages is relegated to the "ample discretion" of the District Judge. *Clomon v. Jackson, supra,* 988 F.2d at 1322; *Pipiles v. Credit Bureau of Lockport, supra,* 886 F.2d

at 27; *Emanuel v. American Credit Exchange,* 870 F.2d 805, 809 (2d Cir.1989).

As the statute states, such additional damages shall not exceed $1,000. It has been held that the maximum additional damages of $1,000 is to be awarded for each case, and not for each violation or improper communication. *Harper v. Better Business Services,* 961 F.2d 1561 (11th Cir.1992); *Cacace v. Lucas,* 775 F.Supp. 502 (D.Conn.1990); *Beattie v. D.M. Collections, Inc.,* 764 F.Supp. 925 (D.Del.1991); *Masuda v. Thomas Richards & Co.,* 759 F.Supp. 1456 (C.D.Cal.1991).

This rule was thoroughly reviewed in *Harper, supra,* as follows:

"**A.   Maximum Statutory Damages Under The FDCPA**

[1]  Harper's claims regarding maximum additional damages are foreclosed by the language of the statute. The FDCPA clearly states that additional damages 'in the case of *any action* by an individual' shall not 'exceed[ ] $1,000.' 15 U.S.C. § 1692k(a)(2)(A) (1988) (emphasis added). The FDCPA does not on its face authorize additional statutory damages of $1,000 per violation of the statute, of $1,000 per improper communication, or of $1,000 per alleged debt. If Congress had intended such limitations, it could have used that terminology. Because Congress instead chose to write that additional damages would be limited to $1,000 per 'action,' we agree with the district court that 'the plain language of section 1692k(a)(2)(A) provides for maximum statutory damages of $1,000.' *Harper,* 768 F.Supp. at 819.

[2]  We acknowledge Harper's attempt to influence our construction of the FDCPA by utilizing the statute's legislative history and by advancing various policy arguments. But when the language of a statute is so clear, that text must control unless there is a clearly expressed legislative intent to the contrary. *See, e.g., United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981); *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108[,] 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). In this case, Harper has failed to

make the required clear showing that the legislature intended anything other than a $1,000 per action limitation. Accordingly, we hold that the district court properly limited Harper's additional damages award to $1,000 under the language of the FDCPA. *See National Envtl. Found. v. ABC Rail Corp.*, 926 F.2d 1096, 1099 (11th Cir.1991); *United States v. Rodriguez–Suarez*, 856 F.2d 135, 137–38 (11th Cir. 1988), *cert. denied*, 488 U.S. 1045, 109 S.Ct. 875, 102 L.Ed.2d 998 (1989)." (961 F.2d at 1563.)

In determining whether to award such "additional damages," the district court must consider "the frequency and persistency of noncompliance by the debt collector, the nature of such noncompliance, the extent to which such noncompliance was intentional, and other relevant factors in deciding the amount of any 'additional damages' awarded." *Clomon, supra*, at 1322; 15 U.S.C. § 1692k(b).

## C. *Attorney's Fees and Costs*

Section 1692k(a)(3) provides that a prevailing plaintiff is entitled to recover "the costs of the action; together with a reasonable attorney's fee as determined by the Court." In *Graziano v. Harrison*, 950 F.2d 107 (3d Cir.1991), in an extensive discussion, the Third Circuit held that the FDCPA mandates an award of attorney's fees, as follows:

"[7] In so remanding, we think it may be helpful to address the standards to be applied in determining an appropriate attorney's fee. Section 1692k(a) sets forth the three standard components of liability for violations of the Act: it states that a debt collector who violates the act 'is liable' for actual damages, statutory damages as determined by the court, and a reasonable attorney's fee. Given the structure of the section, attorney's fees should not be construed as a special or discretionary remedy; *rather, the Act mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general. See de Jesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 235 (1st Cir.1990). Indeed, several courts have required an award of attorney's fees even where violations were so minimal that statutory damages were not warranted. *See Pipiles v. Credit Bureau of Lockport*, 886 F.2d 22, 28 (2d Cir.1989); *Emanuel v. American Credit Exchange*, 870 F.2d 805, 809 (2d Cir.1989); *cf. de Jesus*, 918 F.2d at 233–34 (construing the parallel provision of the Truth in Lending Act to mandate a fee award to a prevailing plaintiff).

[8] The conclusion that an award of attorney's fees is mandated is further supported by section 1692k(b). That section specifies that, in determining the amount of statutory damages to be awarded, the court must consider, among other relevant factors, 'the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional.' Cases interpreting this section have made clear that in the instance of a single, trivial, and unintentional violation of the Act, it is within the court's discretion to decline to award statutory damages at all. *See, e.g., Pipiles*, 886 F.2d at 28; *Emanuel*, 870 F.2d at 809. However, section 1692k contains no parallel language directing the court to consider particular factors in determining a reasonable attorney's fee. In light of the explicit listing of factors to be considered in the award of statutory damages, and the absence of such a list for attorney's fees, we think it inappropriate to read such factors into the word 'reasonable' in section 1692k(a)(3).

[9] We conclude that, in a typical case under the Act, the court should determine what constitutes a reasonable fee in accordance with the substantial Supreme Court precedent pertaining to the calculation of reasonable attorney's fees. *See Texas State Teachers Assoc. v. Garland Indep. School Dist.*, 489 U.S. 782, [789,] 109 S.Ct. 1486, 1492, 103 L.Ed.2d 866 (1989); *Hensley v. Eckerhart*, 461 U.S. 424, 433–37, 103 S.Ct. 1933, 1939–41, 76 L.Ed.2d 40 (1983). Among the factors the court may consider in determining the appropriate amount of the fee is the degree of success obtained by the prevailing plaintiff; if the plaintiff has only partial or limited success, a reduction in the award of attorney's fees may be

appropriate. *See Hensley,* 461 U.S. at 434–37, 103 S.Ct. at 1939–41. The court should also assess the reasonableness of the hours expended by counsel for the prevailing party. *See Id.* at 433–34, 103 S.Ct. at 1939–40. *Only in unusual circumstances, however, may the court decline to award a fee;* in such circumstances, it should formulate particularized findings of fact and conclusions of law explaining its decision. *See de Jesus,* 918 F.2d at 234 & no. 4." (950 F.2d at 113, 114) (emphasis supplied).

In the Second Circuit, in *Pipiles v. Credit Bureau of Lockport, Inc.,* 886 F.2d 22, 28 (2d Cir.1989), it was held that:

"Because the FDCPA was violated, however, the statute requires the award of costs and a reasonable attorney's fee, *see Emanuel v. American Credit Exch.,* 870 F.2d 805, 809 (2d Cir.1989), to be determined by the district court upon remand ..."

### FINDINGS OF FACT AS TO DAMAGES

The Court finds that the plaintiff has established, by a preponderance of the credible evidence, the following damages, pursuant to Section 1692k:

1. Actual damages in the nature of emotional distress in the sum of $1,000.00.

2. With regard to additional statutory damages, the Court finds that the five telephone calls to the plaintiff at his business and residence, and the message given to the plaintiff during the sixth telephone call by the plaintiff to Zapata, were sufficiently frequent, persistent, and intentionally false and deceptive, so as to warrant the imposition of the full amount of $1,000.00 as "additional damages."

3. The Court further finds that the award of a reasonable attorney's fee to the plaintiff's counsel and costs is warranted.

### CONCLUSIONS

Judgment is awarded in favor of the plaintiff against the defendants Metropolitan Retail Recovery, Inc., Carlos Zapata and Alexander Soto, jointly, and severally, as follows:

1. For actual damages in the sum of $1,000.00.

2. For additional damages in the sum of $1,000.00.

3. As to a reasonable attorney's fee and costs, the attorney for the plaintiff is directed to submit an affidavit and any other proof by way of documentary evidence with regard to the amount of the attorney's fees and costs on or before Monday, April 25, 1994 at 5:00 p.m. The attorneys for the defendants may submit opposition papers with regard to the amount of the attorney's fees and costs on or before Wednesday, April 27, 1994 at 5:00 p.m. The matter of the amount of attorney's fees and costs is placed on the Court's motion calendar for disposition on Friday, April 29, 1994 at 10:30 a.m.