[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 7, 2006
THOMAS K. KAHN
CLERK

No. 05-10872
Non-Argument Calendar

_____

D. C. Docket No. 04-10002-CR-SH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

AMISADAY AGUILAR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 7, 2006)**

Before TJOFLAT, ANDERSON and DUBINA, Circuit Judges.

PER CURIAM:

Amisaday Alvarez-Aguilar appeals his conviction and 60-month sentence

for conspiracy to bring aliens into the United States for private gain, in violation of 18 U.S.C. § 371, and, attempt to bring 12 illegal aliens into the United States for private financial gain, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii).  On appeal, Alvarez-Aguilar argues that the district court erred in denying his motion for judgment of acquittal because the evidence was insufficient to establish that he smuggled illegal aliens into the United States "for commercial advantage or private financial gain," an essential element of the offense.  He also argues that the district court abused its discretion in denying his motion for a new trial when: (a) a juror slept through portions of the trial; (b) the prosecutor improperly inquired into the conviction status of two co-defendants; and (c) there was insufficient evidence because the testimony of three cooperating witnesses was not credible.  Finally, he argues that the statutory mandatory minimum sentence of five years was harsh and unreasonable.

I.

Upon a defendant's motion, a district court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a).  "We review de novo the legal question of whether the record contains sufficient evidence to support the guilty verdict." United States v. Tinoco, 304 F.3d 1088, 1122 (11th Cir. 2002).  "When conducting

2

the review of the record, we view the evidence in the light most favorable to the government and resolve all reasonable inferences and credibility evaluations in favor of the jury's verdict." Id. "We uphold the jury's verdict unless no trier of fact could have found guilt beyond a reasonable doubt." Id. (quotation omitted). All credibility choices are made in the government's favor. United States v. Munoz, 430 F.3d 1357, 1367 n. 9 (11th Cir. 2005). "[C]redibility determinations are for a jury to make." United States v. Ndiaye, 434 F.3d 1270, 1296 (11th Cir. 2006).

Federal law provides criminal penalties against any person who knowingly smuggles an illegal alien into the United States "for the purpose of commercial advantage or private financial gain." 8 U.S.C. 1324(a)(2)(B)(ii). We have defined "commercial advantage" as "a profit or gain in money obtained through business activity" and "private financial gain" as "an additional profit specifically for a particular person or group." United States v. Zheng, 306 F.3d 1080, 1086 (11th Cir. 2002).

Alvarez-Aguilar contends that the government failed to establish that he acted for commercial advantage or private gain, one of the essential elements of the offense. According to Alvarez-Aguilar, three witnesses testified that he did not receive money for his role and only one witness testified that he saw Alvarez-

3

Aguilar get paid.

In this case, there was sufficient evidence for the jury to find that Alvarez-Aguilar was paid for his services. Co-defendant Lopez testified that Alvarez-Aguilar admitted that he was paid to act as co-driver of the boat. Two passengers, Alexis Ulloa-Martinez and Mayra Martinez-Nodal, testified that they saw Alvarez-Aguilar on the boat. Joyset Ulloa-Martinez testified that he saw Alvarez-Aguilar get paid. The jury was free to believe this testimony over the testimony of Alvarez-Aguilar's main witness, his cousin Addiel Aguilar. This court will not make credibility determinations.

We conclude that a judgment of acquittal was not warranted because any credibility choices are reviewed in the government's favor, and the evidence was sufficient to establish that Alvarez-Aguilar smuggled aliens into the United States for private financial gain.

II.

A district court may vacate a judgment and grant a new trial if the interest of justice requires. Fed. R. Crim. P. 33. We review a district court's denial of a motion for a new trial for abuse of discretion. United States v. Hernandez, 433 F.3d 1328, 1336 (11th Cir. 2005).

Alvarez-Aguilar argues that the district court abused its discretion in

4

denying his motion for a new trial for three reasons: (a) a juror slept through portions of the trial; (b) the prosecutor improperly inquired into the conviction status of two co-defendants; and (c) there was insufficient evidence because the testimony of three witnesses was not credible.

A. Juror Bivins

A district court has discretion to replace with alternates "any jurors who are unable to perform or who are disqualified from performing their duties." Fed. R. Crim. P. 24(c)(1). We will not disturb a district court's discretion to remove a juror absent a showing of bias or prejudice to one of the parties. See United States v. Fajardo, 787 F.2d 1523, 1525 (11th Cir. 1986)

The record indicates that the district court judge noticed that Juror Bivins was sleeping or having trouble staying awake during both side's opening arguments and on the first day of trial. No mention is made of Bivins being asleep on the second day of trial. At the end of the third day of trial, the district court judge noted that Bivins slept through a considerable portion of that day's session. In his order denying a new trial, the district court judge stated that he kept a close watch on Bivins and instructed a court officer to do the same. The district court believed that it was not necessary to remove Bivins, as he was alert through the substantial portions of the trial. Additionally, the judge was satisfied by Bivins's

5

reassurances that he could perform his duty.

We hold that the district court did not abuse its discretion in allowing Bivins to remain on the jury. See United States v. Freitag, 230 F.3d 1019, 1023 (8th Cir. 2000) (holding that the district court did not abuse its discretion in retaining a possibly sleeping juror because the judge had only noticed inattentiveness on one occasion). The district court judge was in the best position to determine the extent of Bivins's inattention and he decided that Bivins could deliberate and render judgment in this case.

B. The Co-Defendants' Convictions

We have concluded that a "co-defendant's guilty plea or conviction may be brought out at trial provided that 1) the evidence serves a legitimate purpose and 2) the jury is properly instructed about the limited use they may make of it." United States v. DeLoach, 34 F.3d 1001, 1003 (11th Cir. 1994). The use of a codefendant's guilty plea or conviction as substantive evidence of the guilt of another is improper. Id. at 1004. Proper uses of a codefendant's guilty plea or conviction include impeachment of a testifying codefendant, bolstering or weakening a witness's credibility, and preventing a jury from concluding that a culpable co-defendant escaped prosecution. Id. A district court must caution the jury that the conviction of a co-defendant cannot be used to determine the guilt or

6

innocence of the accused.  Id. at 1005.  We presume that a jury follows the instructions given to it by the district judge.  United States v. Ramirez, 426 F.3d 1344, 1352 (11th Cir. 2005).

In the instant case, the government asked its witness, case agent Pedro Cintron, about the conviction status of two co-defendants, Addiel Aguilar and Jose Agra. Alvarez-Aguilar objected, but the district court overruled his objections. Cintron reported that both co-defendants had pled guilty and were awaiting sentencing. The district court then informed the jury that they were not to consider the co-defendants' convictions in determining whether Alvarez-Aguilar was guilty. Alvarez-Aguilar subsequently moved for a new trial.

The government in this case does not argue that the introduction of the co-defendant convictions was proper. Instead, the government argues that it was harmless. We conclude that this testimony was not prejudicial to Alvarez-Aguilar's interests so as to require a new trial. The district court immediately provided an oral curative instruction and a written instruction in its charge to the jury. The district court cautioned the jury that the convictions of Alvarez-Aguilar's co-defendants could not be used to determine his guilt or innocence.  Moreover, later in the trial, the defense itself elicited information about one of these co-defendant's guilty pleas. When Addiel Aguilar testified for the defense, he testified that he had

pled guilty to his charge and had a plea agreement with the government. Because Addiel Aguilar testified for the defense, the government also would have been entitled to use Aguilar's guilty plea as impeachment evidence. This later exchange suggests that the defense suffered little prejudice from the mention of Addiel Aguilar's conviction.

Our decision is also influenced by the limited nature of the discussion about the co-defendant convictions. The government never suggested that Alvarez-Aguilar should be found guilty because his co-defendants were convicted, or that the co-defendants were convicted on evidence similar to the instant case. Most importantly, the district court issued oral and written curative instructions. See United States v. De La Vega, 913 F.2d 861, 866-67 (11th Cir. 1990) (holding that mention of co-defendant's conviction was rendered harmless by the circumstances, particularly the district court's curative instruction); United States v. Lasteed, 832 F.2d 1240, 1243 (11th Cir. 1987) (holding that testimony about a co-defendant's conviction did not require reversal). Accordingly, we hold that the district court did not abuse its discretion in denying Alvarez-Aguilar's motion for a new trial.

C. Sufficiency of the Evidence

Alvarez-Aguilar also argues that the government's cooperating witnesses were not credible and, therefore, a new trial was warranted. Upon a Rule 33 motion

for a new trial based on the weight of the evidence, a court "may weigh the evidence and consider the credibility of the witnesses." United States v. Martinez, 763 F.2d 1297, 1313 (11th Cir. 1985). "Courts are to grant [motions for new trials] sparingly and with caution, doing so only in those really exceptional cases." Id. However, a court may grant such a new trial motion "where the credibility of the government's witnesses [was] impeached and the government's case [was] marked by uncertainties and discrepancies." Id. We review the district court's denial of the motion for abuse of discretion. Id.

We conclude that a new trial was not warranted based on Alvarez-Aguilar's challenges on appeal. The credibility of the government's witnesses was not impeached, and the government's case was not marked by uncertainties and discrepancies or upon compound inferences.

III.

Alvarez-Aguilar objected to certain enhancement in his PSI that affect his Sentencing Guidelines range. These enhancements do not matter, because Alvarez-Aguilar was sentenced to the statutory mandatory minimum sentence of 60 months.

Criminal penalties for smuggling illegal aliens into this country for commercial advantage or private financial gain include a fine and imprisonment for, "in the case of a first or second violation of subparagraph . . . (B)(ii), not less

9

than 3 nor more than 10 years, and for any other violation, not less than 5 nor more than 15 years." 8 U.S.C. § 1324(a)(2)(B).[1]  We must give effect to the plain and unambiguous language of a statute.  United States v. Rodriguez-Suarez, 856 F.2d 135, 137 (11th Cir. 1988).

When a district court correctly imposes the statutory mandatory minimum sentence, any error in the Guidelines calculations is harmless, and we do not need to address such arguments.  United States v. Raad, 406 F.3d 1322, 1323 n.1  (11th Cir.).  The courts remain bound by the statutory mandatory minimum sentences, and nothing in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), changed that obligation.  United States v. Shelton, 400 F.3d 1325, 1333 n.10 (11th Cir. 2005). Even when "a guidelines range falls entirely below a mandatory minimum sentence, the court must follow the mandatory statutory minimum sentence."  United States v. Clark, 274 F.3d 1325, 1328 (11th Cir. 2001). We have emphasized that mandatory minimum sentences, established by Congress, take precedence over the Guidelines range.  Id.

In the instant case, the jury convicted Alvarez-Aguilar of one count of conspiracy and twelve counts of attempting to bring illegal aliens into the United States. The statutory mandatory minimum sentence for Alvarez-Aguilar was 60

---

[1] Each alien is counted as a separate violation.  See United States v. Ortega-Torres, 174 F.3d 1199, 1201 (11th Cir. 1999).

months imprisonment. Even though the Guidelines range fell below the mandatory minimum sentence, the district court was obligated to impose the mandatory statutory minimum. Because we conclude that the district court correctly imposed the statutory mandatory minimum sentence, Alvarez-Aguilar's sentence was neither too harsh nor unreasonable.

Upon full consideration of this case, we find no reversible error. Accordingly, we affirm Alvarez-Aguilar's conviction and sentence.

**AFFIRMED.**[2]

---

[2]Appellant's motion for oral argument is DENIED.