Bridget A. PIPER, Plaintiff,

v.

PORTNOFF LAW ASSOCIATES, et al., Defendants.

No. CIV.A. 03–2046.

United States District Court, E.D. Pennsylvania.

July 31, 2003.

David A. Searles, Donovan Searles, LLC, Philadelphia, PA, for Plaintiff.

James W. Christie, William F. McDevitt, Christie Pabarue Mortenson & Young, Philadelphia, PA, for Defendants.

## MEMORANDUM AND ORDER

KATZ, Senior District Judge.

Plaintiff Bridget Piper brings this action against the defendants under the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, the Pennsylvania Fair Credit Extension Uniformity Act (FCEUA), 73 P.S. § 2270.1 *et seq.*, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law (CPL), 73 P.S. § 201–1, *et seq.* Presently before the court is plaintiff's motion for partial summary judgment and defendant's motion for partial summary judgment. For the reasons set forth below, the plaintiff's motion is granted and the defendants' motion is denied.

### I. Factual Background

Plaintiff Bridget Piper is the co-owner of real property located at 828 Kossuth Street in the Borough of Freemansburg, Pennsylvania which is adjacent to the City of Bethlehem. On behalf of the City of Bethlehem,[1] Portnoff Law Associates ("PLA") sent a notice of delinquency by certified mail to the plaintiff and her husband on February 21, 2002. This notice advised the Pipers that they owed the city $252.75 for delinquent water fees. Although on City of Bethlehem letterhead, the notice directed the Pipers to contact PLA with any questions within 30 days to avoid the imposition of legal fees. On April 4, 2002, PLA mailed a demand letter to Mr. and Mrs. Piper advising them that they now owed the City of Bethlehem $404.37 which included the delinquent water bill, interest, penalties and attorney's fees in the amount of $150.[2] The letter warned that if payment was not received within ten (10) days a lien would be filed against the real property.[3] After receiving

---

1. Since April 2000, the City of Bethlehem employs Portnoff Law Associates ("PLA") as its exclusive attorney for the enforcement of delinquent municipal claims arising from water, sewer, trash, and tax assessments.

2. On December 22, 1999, the City of Bethlehem enacted Ordinance No. 3988, which provided the following schedule for attorney fees for various lien enforcement services: Internal review and sending first demand letter—$150.00; File lien and mailing second demand letter—$150.00; 3) Prepare Writ of Scire Facias—$150.00 Re-issue Writ—$25; Prepare and mail letter under Pa.R.Civ.P. 237.1; Prepare motion for alternate service—$175.00; Prepare motion for summary judgment and related judgment—$150; Prepare write of execution—$750; and Attendance at Sale; Review schedule of distribution and resolve distribution issues—$400.00.

3. The Municipal Claims and Tax Liens Act, 53 P.S. § 7106 provides:

 (a) All municipal claims which may hereafter be lawfully imposed or assessed on any property in this Commonwealth ... shall be and they are hereby declared to be a lien on said property, together with all charges, ex-

the letter, plaintiff contacted PLA requesting verification of the dates of the delinquency. PLA advised the plaintiff that the delinquency occurred in the second and third quarters of 2001. Plaintiff stated that the debt would be paid by April 15, 2001, or she would call to make alternative arrangements. PLA did not receive any payment from Mrs. Piper.

On May 1, 2002, PLA filed a lien against the 828 Kossuth Street property. On May 9, 2002, PLA sent another demand letter advising the plaintiff of the lien and the $150 in additional attorney's fees as well as the $20.50 court filing fee. The letter informed the plaintiff that she had 15 days to resolve the outstanding claim. On May 28, 2002, PLA filed a writ of scire facias against the plaintiff's property, assessed another $150.00 in attorney's fees along with $10 in court costs and $87 for a sheriff's fee. The sheriff served the writ on June 3, 2002.

On June 21, 2002, the plaintiff contacted PLA to request a payment plan. The parties agreed to a three month payment plan with the first payment of $276.60 due on July 5, 2002. The plaintiff submitted the first installment of $276.60 and PLA applied $117.50 to court costs and $159.10 to attorney's fees. After August 5, 2002, however, PLA received no additional payments from the plaintiff. On September 16, PLA mailed another notice informing the plaintiff that she had ten days to act or be in default. PLA assessed $25 in attor-

ney's fees for the preparation of this letter. On October 3, 2002, PLA mailed another notice to Mr. and Mrs. Piper and again informed the home owners that they had ten days to act or be in default. On November 8, 2002, PLA mailed another letter to Mr. and Mrs. Piper advising them that the next step was the filing of a writ of execution. The letter informed the Pipers that they had thirty days to pay the balance due.

On January 13, 2003, PLA ordered a title search of the 828 Kossuth Street property which resulted in a cost of $75 that was assessed against the real property. On February 7, 2003, PLA filed a writ of execution against 828 Kossuth Street. Due to this filing, $750 in attorney's fees, $10 in court costs, and $1500 sheriff's charges were assessed against the property. Although the plaintiff has paid $553.60 towards the $252.75 delinquent water bill, the plaintiff would need to pay $2,806.92 to pay off the debt.

In her complaint, the plaintiff alleges that the defendants have not complied with their obligations under the Fair Debt Collection Practices Act, and the Pennsylvania Fair Credit Extension Uniformity Act provisions of the Pennsylvania Unfair Trade Practices and Consumer Protection Law.[4] Specifically, the plaintiff claims that PLA's form letters to collect delinquent water and sewer bills fail inform the recipient that they were from a debt collector as required by 15 U.S.C. § 1692e(11),[5] nor did

---

penses, and fees incurred in the collection of any delinquent account, including reasonable attorney fees under subsection (a.1), added thereto for failure to pay promptly; . . .

(a.1) *It is not the intent of this subsection to require owners to pay, or municipalities to sanction, inappropriate or unreasonable attorney fees, charges or expenses for routine functions.*
Id. (Emphasis added).

4. The Pennsylvania Fair Credit Extension Uniformity Act defines "unfair methods of competition and unfair or deceptive practices with regard to the collection of debts." 73 P.S. § 2270.4. Engaging in one of these defined practices constitutes a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

5. 15 U.S.C. § 1692e(11) provides that it is a violation of the act when a party fails

the letters include validation notices pursuant to 15 U.S.C. § 1692(g).[6] Following a hearing held on May 14, 2003, this court granted plaintiff's motion for a preliminary injunction and enjoined the defendants from taking any action to facilitate the sheriff's sale of Bridget Piper's home. On June 9, 2003, this court certified a class pursuant to the FDCPA. Following discovery, this court certified a class pursuant to the state consumer protection laws on July 8, 2003. Plaintiff and the class members now seek partial summary judgment as to liability on Counts I and II of her complaint. Defendants seek partial summary judgment with respect to the individual defendants, Michelle Portnoff and Dawn M. Schmidt.

## II. Discussion

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). At the summary judgment stage, the court does not weigh the evidence and determine the truth of the matter. Rather, it determines whether or not there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In making this determination, all of the facts must be viewed in the light most favorable to, and all reasonable inferences must be drawn in favor of, the non-moving party. *Id.* at 256, 106 S.Ct. 2505.

The moving party has the burden of showing there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Mathews v. Lancaster General Hosp.*, 87 F.3d 624, 639 (3d Cir. 1996). In response, the non-moving party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505; *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548; *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir.1989). Rather, there must be evidence on which a jury could reasonably

---

to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

6. 15 U.S.C. § 1692g provides that

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;
(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

find for the nonmovant. *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. 2505. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

### A. Plaintiff's Motion for Summary Judgment

■ The FDCPA "provides a remedy for consumers who have been subjected to abusive, deceptive, or unfair debt collection practices by debt collectors." *Pollice v. National Tax Funding,* 225 F.3d 379, 400 (3d Cir.2000). Under the FDCPA, the following conduct is a violation of the statute:

The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

15 U.S.C. § 1692e(11). In addition, the statute requires debt collectors to include in the initial communication, or notify the consumer in writing within five days of the initial communication,

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

Id. at § 1692g(a). According to the plaintiff, the defendants' letters violated both these sections of the FDCPA by failing to inform the recipients that PLA was a debt collector and by failing to include validation notices. The defendants do not dispute that their letters failed to include this language. Rather, defendants contend that the FDCPA does not apply to their practice because PLA's letters do not concern the collection of a "debt" against the plaintiff as an *individual,* but the enforcement of a municipal lien against a *property.* According to the defendants, municipal assessments and liens against real property do not fall within the definition of debt because they do not involve a "transaction" under the FDCPA. Furthermore, defendants claim they are exempt from the FDCPA because they qualify as government officers under the law.

■ The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the sub-

ject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."[7] 15 U.S.C. § 1692a(5). A "debt collector" under the statute is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). In *Pollice v. National Tax Funding*, the Third Circuit held that water and sewer obligations qualified as debt under the FDCPA. 225 F.3d 379, 400 (3d Cir.2000). Although tax obligations did not meet the definition of debt under the statute, the Third Circuit reasoned that water and sewer fees were debts because, "[a]t the time these obligations first arose, homeowners ("consumers" of water and sewer services) had an 'obligation ... to pay money' to the government entities which arose out of a 'transaction' (requesting water and sewer service) the subject of which was 'services ... primarily for personal, family, or household purposes.'" *Id.* at 400. The Third Circuit wrote that the plain meaning of 15 U.S.C. § 1692a(5) "indicates that a 'debt' is created whenever a consumer is obligated to pay money as a result of a transaction whose subject is primarily for personal, family, or household purposes."

225 F.3d at 401. Because the debt in *Pollice* arose out of an obligation to pay money for water and sewer services that were primarily for personal, family, or household purposes, the delinquent water and sewer bills qualified as debt under the FDCPA. Although the defendants argue that the water and sewer assessments in *Pollice* were levied against the individuals rather than the real property, a debt collector's decision to proceed in rem rather than in personam is insignificant when determining whether the underlying obligation falls within the FDCPA's statutory definition. If a debt collector were able to avoid liability under the FDCPA simply by choosing to proceed in rem rather than in personam, it would undermine the purpose of the FDCPA. Therefore, PLA sought to recover a debt as defined by the FDCPA.

 Defendants also argue that municipal claims against real property do not arise out of a consumer transaction; therefore, the FDCPA does not apply to defendants' letters. In *Staub v. Harris*, the Third Circuit held that in order for a debt to arise from a transaction within the meaning of the FDCPA, the obligation must be the result of a pro tanto exchange. 626 F.2d 275. Defendants maintain that Bethlehem water services are not requested but instead are fairly apportioned between and among all real property owners. Therefore, the municipal assessments and liens enforced by PLA on behalf of Bethle-

7. The FCEUA definitions are similar to those under federal law. Under the FCEUA, debt is defined as:

An actual or alleged past due obligation, claim, demand, note or other similar liability of a consumer to pay money, arising out of a single account as a result of a purchase, lease or loan of goods, services or real or personal property for personal, family or household purposes or as a result of a loan of money or extension of credit which is obtained primarily for personal, family or household purposes, provided, however,

that money which is owed or alleged to be owed as a result of a loan secured by a purchase money mortgage on real estate shall not be included within the definition of debt. The term also includes any amount owed as a tax to any political subdivision of this Commonwealth. Tax includes an assessment, any interest, penalty, fee or other amount permitted by law to be collected. Debt does not include any such amount owed to the United States or the Commonwealth.

73 P.S. § 2270.3.

hem are not pro tanto transactions but "public burdens imposed generally upon the inhabitants of the whole municipality." *Staub*, 626 F.2d at 278. The *Pollice* court relied on *Staub* to conclude that tax obligations are not debts under the FDCPA. As the Third Circuit explained "at a minimum, the statute contemplates that the debt has arisen as a result of the rendition of a service or purchase of property or other item of value. The relationship between taxpayer and taxing authority does not encompass the type of pro tanto exchange which the statutory definition [of debt] envisages." *Pollice*, 225 F.3d at 401 (quoting *Staub*, 626 F.2d at 278). However, as previously discussed, the *Pollice* court found that delinquent water and sewer bills did meet the definition of debt. In this case, the City of Bethlehem rendered a service to the plaintiff. Although the municipality apportioned certain fees among all property owners, the more water an individual used, the greater his water bill. Therefore, providing water service to the citizens of Bethlehem is a pro tanto exchange, or transaction, and the delinquent water charges fall within the FDCPA's definition of debt.

■ Even if the defendants are debt collectors under the FDCPA, defendants claim that they are exempt from liability because they fall within the municipal officers' exception to the act. The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly debts owed or due or asserted to be owed

or due another." 15 U.S.C. § 1692(a)(6). The definition excludes several categories of persons, including officers or employees of government. *Id.* In *Pollice*, the Third Circuit held that the government employee exemption "does not extend to those who are merely in a contractual relationship with the government." 225 F.3d at 406. Because the defendants are in a contractual relationship with the City of Bethlehem to recover delinquent water bills, the municipal officers' exemption does not extend to them. 15 U.S.C. § 1692(a)(6). Therefore, PLA qualifies as a debt collector under the statute.

■ Defendants also claim that any impropriety constituted a bona fide error within the meaning of 15 U.S.C. § 1692k(C). Under this section, "[a] debt collector may not be held liable ... if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." However, a majority of circuit courts have held that this defense is only available for clerical and factual errors.[8] *See, e.g., Picht v. Jon R. Hawks, Ltd.*, 236 F.3d 446, 451–52 (8th Cir.2001); *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2nd Cir.1989); *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 779 (9th Cir.1982). *But see, Nielsen v. Dickerson*, 307 F.3d 623, 640 (7th Cir.2002). Because the defendants intentionally excluded the required language, the impropriety is not bona fide error. Therefore, there are no genuine issues of material fact, and plaintiff and the class are entitled to judgment

---

**8.** The Third Circuit in *Pollice* did not directly address the bona fide error defense but did reason that defendants "cannot be held liable under the FDCPA based on their reliance on the local ordinances and resolution and the representations of the government entities."

*Pollice*, 225 F.3d at 407 n. 31. In *Pollice*, the defendants raised this defense in response to allegations that their interest rates and penalties were excessive. However, the Third Circuit did not address whether mistakes of law were bona fide errors under the statute.

as a matter of law as to Counts I and II of the complaint.

### B. Defendants' Motion for Summary Judgment

 Defendants move for partial summary judgment with respect to the individual defendants, Michelle Portnoff and Dawn Schmidt. According to the defendants, neither an employee nor a shareholder may be held individually liable under the FDCPA for a violation performed by its corporate employer. *See Pettit v. Retrieval Masters Creditors Bureau, Inc.,* 211 F.3d 1057 (7th Cir.2000). In *Pettit,* the Seventh Circuit concluded that the employees were not personally liable under the FDCPA because a debt collection company would answer for its employees' violations under the act. Comparing the FDCPA to Title VII, the Seventh Circuit found that vicarious or respondeat superior liability will give debt collection company managers "proper incentives to adequately discipline wayward employees, as well as to instruct and train employees to avoid actions that might impose liability." *Pettit,* 211 F.3d at 1059 (quoting *EEOC v. AIC Sec. Invest., Ltd.,* 55 F.3d 1276, 1282 (7th Cir.1995)). However, in *Pettit,* the plaintiff sued both the debt collection agency and its president but did not allege that the president was a debt collector. Rather, the plaintiff merely charged that the president was liable because of the agency's violations. In *Pollice v. National Tax Funding, L.P.,* the Third Circuit found a general partner liable under the FDCPA and distinguished *Pettit.* 225 F.3d 379 (3d Cir.2000). The court wrote:

> Here, we do not deal with the liability of a shareholder of a "debt collector" corporation, nor do we deal with the liability of a person who merely works for a "debt collector" company. Rather, we deal with the liability of the general partner where the limited partnership meets the definition of "debt collector."

We believe that a general partner exercising control over the affairs of such a partnership may be held liable under the FDCPA for the acts of the partnership.

*Pollice,* 225 F.3d at 405 n. 29. Other district courts have held that officers and employees of the debt collecting agency may be jointly and severally liable with the agency. *See Musso v. Seiders,* 194 F.R.D. 43, 46–47 (D.Conn.1999) ("A high ranking employee, executive or director of a collection agency may fit within the statutory definition of a debt collector."); *Ditty v. CheckRite, Ltd.,* 973 F.Supp. 1320, 1336–37 (D.Utah 1997) (finding that a collection firm's attorney was personally liable under the FDCPA after meeting the definition of a debt collector); *Teng v. Metropolitan Retail Recovery, Inc.,* 851 F.Supp. 61, 67 (E.D.N.Y.1994) (same); *West v. Costen,* 558 F.Supp. 564, 587 (W.D.Va.1983) (same). In determining that an employee could be liable under the FDCPA, the *Teng* court reasoned:

> First, each employee is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts or who regularly collects or attempts to collect ... debts owed or due ... another...."
>
> Second, Zapata and Soto are each affirmative actors and tortfeasors, who actually made the actionable phone calls, and would be personally liable if this was a tortious cause of action. Thus, the defendants Met Retail, Zapata and Soto are jointly and severally liable for the damages incurred by the plaintiff, if there is liability.

*Teng,* 851 F.Supp. at 67. In this case, plaintiff has shown that the individual defendants both signed debt collection letters, or authorized others to sign the letters for them, and were involved in PLA's day to day operations. As the *Pollice*

court found, individuals who exercise control over the affairs of a business may be held liable under the FDCPA for the business' actions. *Pollice*, 225 F.3d at 405 n. 29. Therefore, the defendants motion for partial summary judgment is denied.

### C. Interlocutory Appeal

This court further certifies this issue for immediate appeal pursuant to 28 U.S.C. § 1292(b). This section requires that 1) the issue involve a controlling question of law, 2) as to which there is substantial grounds for difference of opinion, and 3) an immediate appeal of this order may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b). Although the Third Circuit has found that water and sewer bills are debts under the FDCPA, the court has not authoritatively addressed whether the FDCPA applies to in rem proceedings to recover delinquent water and sewer debts. As noted, the *Pollice* court merely addressed the collection of a "debt" against an *individual* rather than the enforcement of a municipal lien against a *property*. There is substantial grounds for a difference of opinion on this question which involves a controlling issue of law.[9] Because the parties have informed the court that they have reached an agreement on damages, resolving this issue will materially advance the ultimate termination of the litigation.

**9.** In a previous case involving the defendants, this court approved a stipulated settlement agreement in a similar class action. *See Parks v. Portnoff Law Associates, Ltd.*, 210 F.R.D. 146 (E.D.Pa.2002). In the *Parks* case, the court wrote:

> The court acknowledges and agrees that municipal assessments and liens against real property do not fall within the definition of "consumer debt" under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et. seq.* ("FDCPA"), and, therefore, the provisions of the FDCPA do not apply to defendants' activities on behalf of local gov-

*III. Conclusion*

For the foregoing reasons, the plaintiff's motion for partial summary judgment as to liability is granted, and defendants' motion is denied.

ernments (as alleged in the Amended Complaint).
*Id.* In a footnote, however, the court noted that courts had not authoritatively addressed this issue and it could be litigated in other cases. After further reviewing the Third Circuit's decision in *Pollice v. National Tax Funding*, 225 F.3d 379 (3d Cir.2000), it is this court's opinion that the FDCPA does apply to the collection of water and sewer debts even if the debt collector pursues the debts in rem rather than in personam. However, there is substantial for a difference of opinion, and certification of the issue is appropriate.