Robert ALBANESE, et al., Plaintiffs,

v.

PORTNOFF LAW ASSOCIATES, LTD., et al., Defendants.

No. CIV.A. 03–5697.

United States District Court, E.D. Pennsylvania.

Jan. 16, 2004.

David A. Searles, Donovan Searles, LLC, Philadelphia, PA, for Robert Albanese, Plaintiff.

Benjamin G. Lipman, Portnoff Law Associates, Ltd., Wynnewood, PA, James Christie, William F. McDevitt, Christie Pabarue Mortensen & Young, Philadelphia, PA, for Portnoff Law Associates, Ltd, Michelle R. Portnoff, Dawn M. Schmidt, Defendants.

## MEMORANDUM AND ORDER

KATZ, Senior District Judge.

Plaintiff Robert Albanese brings this class action[1] against Defendants Portnoff Law Associates ("PLA"), Michelle R. Portnoff, and Dawn M. Schmidt,[2] alleging that they employed deceptive practices and charged excessive fees and costs in their attempt to collect an overdue trash collection fee from Plaintiff on behalf of Lower Mount Bethel Township ("Township"). He seeks relief under the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, the Pennsylvania Fair Credit Extension Uniformity Act (FCEUA), 73 P.S. § 2270.1 *et seq.*, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law (CPL), 73 P.S. § 201–1, *et seq.*[3]

Presently before the court are the Parties' Cross Motions for Summary Judgment. In his Motion, Plaintiff seeks a ruling that Defendants are liable under the FDCPA[4] for their failure to make certain

---

1. By Order entered December 4, 2003, this court certified the following class: "All natural persons who, as owners of real property located in the Commonwealth of Pennsylvania used primarily for personal, family or household purposes, received communications from defendants after January 3, 2002, relating to municipal claims for trash assessments."

2. Defendant Portnoff, an attorney, is the sole shareholder and President of PLA. In her role as President, she is responsible for supervising the staff and operations of the firm. Her daily duties include legal work, reviewing files, preparing pleadings, interacting with clients, and marketing. Defendant Schmidt is one of the firm's associate attorneys, as well as its Corporate Director. She is the PLA attorney responsible for representing the Township.

3. These claims comprise Counts I and II of Plaintiff's five-count, class action Complaint, which was filed in this court on October 14, 2003. Plaintiff also alleges various additional state law violations on the part of Defendants, including requiring a debtor to pay excessive costs in violation of 41 Pa. Stat. Ann. §§ 501, 502 (Count III), imposition of an illegal penalty (Count IV), and unjust enrichment (Count V).

4. Although Plaintiff only explicitly seeks a liability ruling with respect to the FDCPA, Pennsylvania state law provides that any violation by a debt collector of the that federal statute would also constitute an unfair or deceptive practice under the FCEUA. 73 P.S. § 2270.4(a). Defendants, however, contend that Plaintiff cannot seek recovery under both the FDCPA and the FCEUA but instead must choose one statute under which to proceed. In setting forth this argument, they rely on the fact that the FCEUA prohibits cumulative penalties against debt collectors who violate both the FDCPA and the state statute. 73 P.S. § 2270.5(c). This provision, however, does not support Defendants' procedural argument here. Although it prevents this court from permitting Plaintiff to recover for the same violation under both state and federal law, the statute's ban on cumulative penalties does not prevent Plaintiff from proceeding under both statutes simultaneously—so long as he chooses one of the two statutory remedies under which to seek damages. *Piper v. Portnoff Law Assoc.*, 216 F.R.D. 325, 328

disclosures mandated by the Act in connection with their actions taken against him and on behalf of the Township.[5] In their Motion, Defendants contend that they cannot be found liable for their actions taken with respect to the Plaintiff because such actions are not covered the FDCPA. For the reasons set forth below, both motions are denied.

## I. Background

At all times relevant to this action, Plaintiff has resided with his three children at 6840 Front Street in Martins Creek, Pennsylvania, in a home that he owns jointly with his former wife, Sandra Albanese. During the years 1998–2001, neither Plaintiff nor his former wife paid trash collection fees owed to the Township.[6] On February 15, 2002, in order to resolve debt collection issues such as those involving the Plaintiff, the Township entered into a contract with PLA, a law firm whose principal purpose is to assist municipalities within the Commonwealth of Pennsylvania in administering and collecting delinquent claims.[7] The contract

(E.D.Pa. July 8, 2003). *See also Oslan v. Collection Bureau of Hudson Valley,* 206 F.R.D. 109 (E.D.Pa.2002) (certifying a class under both the FDCPA and the FCEUA). Thus, Plaintiff may proceed under both statutes at this time.

5. Despite Plaintiff's setting forth various claims in his Complaint, his Motion for Summary Judgment presently before this court is tailored to only one issue: Whether the Defendants are liable under the FDCPA for their failure to include in the form letters sent to Plaintiff the disclosures mandated by Sections 1692e(11) and 1692g of that Act.

Section 1692e(11) provides that the following constitutes an unlawful debt collection practice: "The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action." 15 U.S.C. § 1692e(11).

Section 1692g provides, "Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
(1) the amount of the debt;
(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor." 15 U.S.C. § 1692g.

6. Enacted on November 8, 1995, Township Ordinance No. 95–3 authorizes that an annual fee be imposed on each residential unit within the Township for refuse collection service. The fee, which is the same for each residential unit—except that residents age 62 or older receive a 50% discount—is due on February 15th of each year.

7. Also on February 15, 2002, the Township enacted Ordinance No. 02–01, which set the following schedule of attorney's fees for various lien enforcement services: Internal review and sending first demand letter— $160.00; File lien and mailing second demand letter—$175.00; Prepare Writ of Scire Facias—$175.00; Re-issue Writ—$30.00; Prepare and mail letter under Pa. R. Civ. P. 237.1—$30.00; Prepare Motion for Alternate

provided that PLA would serve as the Township's exclusive attorney for the enforcement of all municipal claims arising from water, sewer, trash, and tax assessments.

Between August 1 and August 15, 2002, the Township sent PLA the delinquent trash assessments against the Plaintiff's real property for the years 1998–2001. These assessments reflected a total overdue balance of $990.92. On August 27, 2002, PLA sent Plaintiff and Mrs. Albanese a notice of delinquent trash fees, advising them that they owed the Township $1,040.52, an amount which included delinquent fees, interest,[8] and a $35.00 administrative cost. They were further advised that if payment were not received by the due date of October 2, 2002, legal proceedings would be instituted, and collection costs and attorneys fees would be assessed. The letter did not state that it was sent by a debt collector, as required by Section 1692e(11) of the FDCPA, nor did it contain the validation notice or verification language required by Section 1692g.

On November 4, 2002, PLA sent Plaintiff and Mrs. Albanese another letter stating that Plaintiff owed the Township $1,212.44, an amount which included a $160.00 legal fee. The letter advised Plaintiff that if payment were not received within ten days, a lien would be filed against his property.[9] Again, this letter did not state that it was from a debt collector, nor did it contain the required

validation notice or verification language. Approximately two weeks later, on November 19, 2002, PLA followed through on its promise and prepared a lien for filing against Defendant's property. That lien was filed on or about December 4, 2002.

On that same date, PLA sent Plaintiff a third letter, this time advising that the Township had indeed filed a lien against his property and that a payment of $1,426.85 would be required to clear it. This amount included interest, a fee of $175 for filing the lien, and $25.50 for court costs. The letter also explained that if PLA did not receive full payment within fifteen days, it would take action to begin the process of scheduling a Sheriff's Sale of Plaintiff's property. This letter suffered from the same infirmities with respect to the FDCPA as the previous two.

On December 26, 2002, PLA filed a Writ of Scire Facias against Plaintiff's home. The Sheriff of Northampton County served the Writ on Plaintiff and his former wife in early January of the following year. Later that month, on January 23, 2002, PLA mailed a notice to Plaintiff and his former wife, pursuant to Pa. R.C.P. 237.1, advising them that they had ten days to act or be in default. The letter reflected a balance due of $1,744.74, which included interest, a $175.00 fee for preparing the Writ, an $87.00 Sheriff's fee for the Writ, a $10.00 court filing fee, and a $30.00 legal fee. Although the letter was purportedly signed by Schmidt, the initials "L.B." ap-

---

Service—$175.00; Prepare Default Judgment—$175.00; Prepare Writ of Execution—$750.00; Attendance at sale, review distribution schedule, and resolve distribution issues—$400.00.

8. Township Ordinance No. 95–3 authorizes PLA to impose a simple interest charge against delinquent trash assessments, which charge is calculated against the unpaid principal plus the initial penalty.

9. The Municipal Claims and Tax Liens Act (MCTLA) provides, in relevant part:

All municipal claims ... which may hereafter be lawfully imposed or assessed on any property in this Commonwealth ... shall be and they are hereby declared to be a lien on said property, together with all charges, expenses, and fees incurred in the collection of any delinquent account, including reasonable attorney fees. 53 P.S. § 7106(a).

peared next to her signature. The letter did not state that it was from a debt collector and did not contain any validation notice or verification language.

On January 29, 2003, Plaintiff contacted PLA for the first time and stated that he would inquire into whether his mortgage company would pay the delinquent assessments. At that time, PLA informed him of the availability of payment plans. Plaintiff, however, did not follow up with PLA after that conversation, and on February 21, 2003, Defendants prepared and filed a default judgment against him with the Northampton Court of Common Pleas.

On March 7, 2003, PLA sent Plaintiff a letter that urged him to pay the current balance on his delinquent trash fees—a sum of $1,946.79—or have a Writ of Execution filed against him. This balance included additional interest, a $175.00 attorney fee for the preparation and filing of the default judgment, $10.00 in court costs, and a $4.00 notary fee. This letter was also purportedly signed by Schmidt but again bore another's initials, this time "S.C.R." The letter did not disclose that it was from a debt collector, nor did it contain any validation notice or verification language. On June 2, 2003, PLA mailed another letter to Plaintiff, again informing him that the filing of a Writ of Execution was imminent. Two weeks later, PLA ordered a title search of Plaintiff's property.

On September 3, 2003, PLA followed through on its latest promise and filed the Writ of Execution against Plaintiff's property. Plaintiff received notice by Praecipe for Writ of Execution, signed by Schmidt, which provided that Defendants sought to collect a total amount of $4,315.27 for the delinquent trash fees. This figure included additional interest, a $75.00 title search fee, a $750.00 legal fee for the Writ, $10.00 in court costs, and a $1,500.00 sheriff fee for execution.

On September 5, 2003, after receiving the Praecipe, Plaintiff again contacted PLA and conveyed that he could not afford to satisfy his debt. Approximately two weeks later, PLA sent Plaintiff a Notice of Sheriff's Sale of his property, advising him that his home would be sold on December 5, 2003 to enforce the court judgment for $1,942.82 obtained against him by the Township. The notice further informed Plaintiff that he could prevent the sale by taking immediate action in the form of either: (1) paying his outstanding balance, (2) petitioning the court, or (3) instituting other legal proceedings. In the event that Plaintiff chose the first option, he was instructed to call PLA to find out the exact amount of his debt. This letter did not state that it was from a debt collector and did not contain any of the language required by the FDCPA.

On October 14, 2003, as a result of this chain of events, Plaintiff filed a class-action Complaint in this court, naming PLA, Portnoff, and Schmidt as Defendants. On November 4, 2003, Plaintiff filed a Motion for Temporary Restraining Order and/or Preliminary Injunction, in which he sought a stay of the Sheriff's Sales that Defendants had scheduled of his, and other class members', homes. The parties, however, entered into a stipulation—approved by this court's Order dated January 12, 2004—whereby Defendants have sought a continuance of the Sheriff's Sale of Plaintiff's home and have also agreed to refrain from taking any action to facilitate the sale of property owned by class members during the pendency of this litigation. In December, 2003, the parties filed Cross Motions for Summary Judgment, both of which are now before the court.

## II. Discussion

Summary judgment is appropriate if the pleadings, depositions, answers to inter-

rogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). At the summary judgment stage, the court does not weigh the evidence and determine the truth of the matter. Rather, it determines whether or not there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In making this determination, all of the facts must be viewed in the light most favorable to, and all reasonable inferences must be drawn in favor of, the non-moving party. *Id.* at 256, 106 S.Ct. 2505.

The moving party has the burden of showing there are no genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Mathews v. Lancaster Gen. Hosp.,* 87 F.3d 624, 639 (3d Cir.1996). In response, the non-moving party must adduce more than a mere scintilla of evidence in its favor and cannot simply reassert factually unsupported allegations contained in its pleadings. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548; *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989). Rather, there must be evidence on which a jury could reasonably find for the nonmovant. *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. 2505. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

On the other hand, "summary judgment may not be granted if there is a disagreement over what inferences can be drawn from the facts even if the facts are undisputed." *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.,* 90 F.3d 737, 744 (3d Cir.1996) (citations omitted).

A. *Piper*

This case presents many of the same issues decided by this court in the related case of *Piper v. Portnoff Law Assoc.*[10] In *Piper,* the class action plaintiff brought suit against PLA—including individually named defendants Portnoff and Schmidt— alleging that its method of collecting delinquent water fees on behalf of the City of Bethlehem violated the FDCPA, FCEUA, and CPL. 274 F.Supp.2d 681, 683 (E.D.Pa. July 31, 2003). This court granted partial summary judgment in favor of the plaintiff, holding that the defendants' actions subjected them to liability under the FDCPA. In so doing, it rejected a host of the defendants' arguments, many of which they again raise in the instant case.

Perhaps the most significant argument set forth by the defendants in *Piper*—and rejected by this court—was that they could not be held liable for their enforcement of a municipal lien against real property because the FDCPA only applies to the collection of debts against individuals. Although this court disagreed and held that the Act applies to in rem proceedings as well as those in personam, it recognized that the issue involved a debatable, con-

---

**10.** Piper resulted in four published decisions by this court. *See Piper v. Portnoff Law Assoc.,* 262 F.Supp.2d 520 (E.D.Pa. May 15, 2003) (enjoining defendants from conducting sheriff's sale of class representative plaintiff's home); *Piper v. Portnoff Law Assoc.,* 215 F.R.D. 495 (E.D.Pa. June 10, 2003) (certifying class under the FDCPA); *Piper v. Portnoff Law Assoc.,* 216 F.R.D. 325 (E.D.Pa. July 8, 2003) (certifying class under both the FDCPA and state laws); *Piper v. Portnoff Law Assoc.,* 274 F.Supp.2d 681 (E.D.Pa. July 31, 2003) (granting partial summary judgment on liability in favor of plaintiff).

trolling question of law and, as such, certified it for interlocutory appeal. *Id.* at 690 (citing 29 U.S.C. § 1292(b)). The Court of Appeals for the Third Circuit has accepted the appeal on that issue, and the case is currently pending before it.

### B. *In Rem Proceedings*

■ As in *Piper,* Defendants' threshold argument is that the FDCPA does not apply to their practice because PLA's letters do not concern the collection of a debt against the Plaintiff as an individual, but rather the enforcement of a municipal lien against Plaintiff's property. As set forth in Subsection A *supra,* this court ruled against Defendants on this precise issue in *Piper,* and the appeal of that ruling is currently pending before the Third Circuit. Both because Defendants have failed to convince this court that its prior decision was incorrect, and because they have not attempted to distinguish the facts of the instant case from in *Piper,*[11] this court finds that the FDCPA applies to in rem proceedings, as well as those in personam.

The FDCPA defines debt as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). A con-

sumer, as defined by the statute, is "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 1692a(3). Defendants argue that their actions are not governed by the FDCPA because (1) according to the MCTLA, they did not seek enforcement of a *debt* but a *lien, see* 53 P.S. § 7106(a) (any lawfully imposed municipal claim against property is declared to result in a lien against that property); and (2) they did not target the Plaintiff as a *consumer* but instead targeted a piece of *real property.*

■ First, the delinquent trash fees constitute a debt under the FDCPA because the Plaintiff was obligated to pay money as a result of a transaction whose subject was primarily for household purposes. *Pollice v. Nat'l Tax Funding,* 225 F.3d 379, 401 (3d Cir.2000); *Piper,* 274 F.Supp.2d at 687 (applying *Pollice* to an in rem proceeding to collect delinquent water fees). PLA sent Plaintiff a flurry of letters, some of which informed him that he could terminate any proceedings against his home by *paying money* to satisfy his overdue balance. Defendants argue that because these letters were mandated by the MCTLA, *see* 53 P.S. §§ 7106(a.3)(1)-(4), 7106(c), their sending them does not transform the nature of the proceedings against Plaintiff from in rem to in personam. The fact that these letters may have been mandated by state law, however, is irrelevant[12] because therein, PLA never-

---

**11.** Although Defendants have not attempted to distinguish the two cases with respect to this argument, they have, in another context, argued that the trash fees here must be treated differently from the water debts in *Piper* because the former operate as a per capita tax. The court addresses this argument *infra* in Subsection E.

**12.** In *Romea v. Heiberger & Assoc.,* 163 F.3d 111 (2d Cir.1998), the Second Circuit rejected a similar argument. There, a tenant filed suit against her landlord's law firm, alleging that the notice it sent her demanding payment of

rent arrearage violated the FDCPA. The firm argued that the notice was not covered by the Act because it was not a "communication" sent "in connection with the collection of any debt" as defined in 15 U.S.C. § 1692e. Instead, it maintained that the letter was merely a prerequisite under New York state law to instituting an in rem proceeding in order to recover possession of the property. The court disagreed, finding that "the letter was undeniably a communication as defined by the FDCPA in that it conveyed information regarding a debt to another person … the fact that the letter also served as a prerequisite to

theless instructed Plaintiff to pay money for household services rendered. As such, they fall squarely within the purview of the FDCPA.

■ The Defendants' second contention—that the FDCPA does not apply because PLA purposefully pursued an action against Plaintiff's real property and not against the Plaintiff himself as a consumer—is likewise without merit. Defendants have offered no principled explanation as to why this court should abandon its finding in *Piper* that, "[A] debt collector's decision to proceed in rem rather than in personam is insignificant when determining whether the underlying obligation falls within the FDCPA's statutory definition. If a debt collector were able to avoid liability under the FDCPA simply by choosing to proceed in rem rather than in personam, it would undermine the purpose of the FDCPA." 274 F.Supp.2d at 687. Indeed, other courts in this district have declined to draw such a distinction based solely on the technical characteristics of a proceeding. *See, e.g., Flores v. Shapiro & Kreisman,* 246 F.Supp.2d 427, 433–34 (E.D.Pa. 2002) (applying FDCPA to attorney debt collector's actions in connection with mortgage foreclosure). Based on the foregoing, this court upholds its ruling in *Piper* that the FDCPA applies to debt collection efforts, in rem and in personam alike.

■ Defendants argue, in the alternative, that even if the FDCPA applies to in rem proceedings, the Act was not intended to cover the collection of municipal assessments. In support of this contention, they set forth various policy arguments, the most notable of which is that the MCTLA has been so effective in helping municipalities to collect delinquent claims cost-effectively, that it should preempt the FDCPA

commencement of [an in rem proceeding under state law] is wholly irrelevant to the requirements and applicability of the FDCPA."

in this realm. This line of reasoning is flawed for two reasons.

First, the Third Circuit has explicitly held that municipal assessments qualify as debts under the Act. *Pollice,* 225 F.3d at 400. As such, no policy argument—however convincing it might be—can convince this court to contradict binding authority. Second, with regard to the preemption argument in particular, Defendants' logic is self-contradictory. In enacting the FDCPA, Congress intended to "promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). As such, the Act requires all persons to comply with state laws that are not inconsistent with its purposes. *Id.* § 1692n. According to the Act's terms, a state law is not inconsistent with the FDCPA "if the protection such law affords any consumer is greater than the protection provided by this subchapter." *Id.*

According to the Defendants, because the MCTLA sets forth more specific procedural guidelines for the collection of municipal liens, it affords consumers greater protection that the FDCPA, and, as such, is not inconsistent with the same. This argument, however, is logically flawed. While Defendants contend that their letters conformed to the requirements of the MCTLA, at the same time, they do not deny that those same letters failed to meet the procedural mandates of the FDCPA. It is quite difficult for the court to conclude that Defendants were able to comply with a purportedly more consumer-protective law, when they were unable to comply with a law that supposedly offered consumers fewer procedural safeguards. As such, because the court finds that the two laws are inconsistent, there can be no

*Romea,* 163 F.3d at 116 (citations and quotations omitted).

question that the Defendants are bound by the FDCPA.

■ Even if the court were to accept this argument and find that the two laws are not inconsistent, the only conclusion it would be permitted to draw as a result would be that debt collectors are bound by both laws, and not—as Defendants contend—that the more protective state law preempts the federal law. The FDCPA itself makes no mention of preemption. It merely states that, to the extent a state enacts a debt collection law that protects consumers more than does the FDCPA, debt collectors must follow that state law. The statute does not contain any language suggesting that, in such cases, debt collectors must follow the state law to the exclusion of the federal law. Furthermore, Defendants have not offered, and the court has not found, any authority for the proposition that Congress intended to leave regulation of debt collection activities to the states. As a result, Defendants' alternative argument that the FDCPA was not intended to cover the collection of municipal assessments must fail.

## C. *Government Officer Exception to the FDCPA*

■ Defendants next contend that their actions cannot subject them to liability under federal law because they are explicitly excepted from the FDCPA's definition of a "debt collector." The court ruled against Defendants on this precise argument in *Piper,* and it must do so again here because Defendants have failed to adequately distinguish the facts of the two cases.

According to the FDCPA, a debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due anoth-

er." 15 U.S.C. § 1692a(6). Congress excluded several categories of persons from this definition, including any state officer or employee—including all political subdivisions—"to the extent that collecting or attempting to collect any debt is in the performance of his official duties." *Id.* § 1692a(6)(C).

In *Pollice,* the Third Circuit held that this exemption applies only to state "officers" or "employees" and that it "does not extend to those who are merely in a contractual relationship with the government." 225 F.3d at 406. *See also Brannan v. United Student Aid Funds, Inc.,* 94 F.3d 1260, 1263 (9th Cir.1996) (holding that the exception applies only to government officials or employees and not to a private, nonprofit organization with a government contract); *Piper,* 274 F.Supp.2d at 688 (applying *Pollice* and finding that law firm contractually bound to collect debts on behalf of municipality did not fall within FDCPA exception for government officers); *Gradisher v. Check Enforcement Unit, Inc.,* 133 F.Supp.2d 988, 992 (W.D.Mich.2001) ("[A]n independent contractor is not entitled to an exemption to the FDCPA ... [I]f the legislature had intended to allow independent contractors, rather than just government agencies and employees, to escape liability under the FDCPA, it could have explicitly stated as much.").

Defendants advance two arguments in an attempt to overcome this precedent. First, they contend that because PLA has been appointed as the Township's "solicitor" for the collection of municipal assessments, it qualifies as an "officer" under Section 1692a(6)(C). Second, Defendants submit that other federal courts have found that similar government functionaries are exempt from compliance with the FDCPA. This court rejects both arguments.

Defendants' claim that PLA has been appointed as the Township's "solicitor" for the collection of municipal assessments is unsupported by any record evidence. First, the retainer agreement between the Township and PLA does not contain the word "solicitor," nor does it indicate that the Township is conferring any official status on PLA. Instead, the document is merely a contract that sets forth the respective rights and obligations of the two parties. As such, it provides that the Township "agrees to retain PLA as its exclusive *agent* for the collection of unpaid garbage taxes, real estate taxes and user fees that are or become delinquent during the terms of this contract." Second, Township Ordinance 02–01—which establishes the schedule of attorney's fees that PLA is authorized to charge in connection with its collection activities—likewise makes no mention of the word "solicitor" or of the fact that the Township sought to confer any type of official status on PLA. Third, in her witness statement, Defendant Schmidt explains, "PLA is the exclusive legal *counsel* for Lower Mount Bethel Township regarding the enforcement of municipal liens from delinquent garbage taxes." For these reasons, the court finds that there is no genuine issue as to whether PLA is an officer or employee of the Township within the meaning of 15 U.S.C. § 1692a(6)(C).

Second, Defendants' argument that other federal courts have exempted parties in similar situations as PLA is likewise without merit. In setting forth this argument, the Defendants fail to distinguish—or even mention—*Piper*, in which this court, considering a similar retainer agreement between PLA and the City of Bethlehem, found that *Pollice* was controlling and, as such, PLA was neither a government officer nor employee within the meaning of the FDCPA exemption. 274 F.Supp.2d at 688. Defendants instead cite to two feder-

al cases, both of which are inapposite, and both of which were decided before *Pollice.*

In *Heredia v. Green,* the Third Circuit held that a Landlord and Tenant Officer of the Philadelphia Municipal Court was a state officer and was, therefore, exempt from the requirements of the FDCPA. 667 F.2d 392, 394 (3d Cir.1981). The Officer in *Heredia* was officially appointed by the President Judge of the Municipal Court, who retained the power both to remove him from his position, and to order him to take undertake specific actions. *Id.* Furthermore, the Officer and the Court were not contractually bound to each other. To the contrary, PLA was never appointed to a position by the Township. Instead, it executed a contract and subsequently performed the duties set forth therein, as would any independent contractor—filling the precise role that the Third Circuit later held did not qualify for exemption under the Act. *Pollice,* 225 F.3d at 406. As such, even though PLA may have been subject to the orders of the Township, all such obligations arose from a contractual relationship to provide services and not from PLA's being appointed to any official position. Thus, Defendants' reliance on *Heredia* is misplaced.

Defendants also rely on *Games v. Cavazos,* in which the District of Delaware held that U.S.A. Funds, a private federal student loan guarantee agency, qualified for the government officer exemption because its actions in sending out debt-related notices to consumers were under the complete control and direction of the government. 737 F.Supp. 1368, 1387–88 (D.Del. 1990) (finding *Heredia* controlling). This case, however, was decided before *Pollice,* and its holding has been called into doubt since. *See Brannan,* 94 F.3d at 1263 (holding, on similar facts, that U.S.A. Funds was subject to the FDCPA); *Gradisher,* 133 F.Supp.2d at 991–92 (disagreeing with *Games* and adopting the logic of

*Brannan* and *Pollice* to conclude that an independent contractor is not entitled to exemption under the FDCPA). As such, this court declines to follow *Games* and instead concludes, as it did in *Piper*, that PLA does not qualify for exemption from the FDCPA.

### D. *Individual Defendants*

█ Although Plaintiff brings suit against PLA, Schmidt, and Portnoff, the Defendants contend that the court should dismiss the latter two from the action because individuals cannot be held liable for FDCPA violations on the part of an entity with which they are affiliated. This court, however, ruled against Defendants on a similar argument in *Piper*, and, once again, they have failed to cast doubt upon—or distinguish—that ruling.

As in *Piper*, Defendants rely on *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, in which the Seventh Circuit held that FDCPA violations were governed by respondeat superior liability. 211 F.3d 1057, 1059 (7th Cir.2000). In *Pollice*, however, the Third Circuit distinguished *Pettit* and found a general partner liable under the FDCPA for the acts of the partnership in violation thereof. *Pollice*, 225 F.3d at 405 n. 29 (explaining that a general partner who exercises control over the affairs of a partnership that qualifies as a "debt collector" [13] under the Act may be held liable for the acts of the partnership). Other courts have agreed with this rationale and have held that officers and employees of a debt collecting agency may be jointly and severally liable with the agency. *Piper*, 274 F.Supp.2d at 689 (citing cases). In particular, in *Teng v. Metro. Retail Recovery, Inc.*, the Eastern District of New York found that an employee could be held liable for an employer's FDCPA violation because (1) each defendant employee was a "debt collector" under the Act because each was a person in a business, the principal purpose of which was debt collection; and (2) each defendant was a tortfeasor who made actionable phone calls. 851 F.Supp. 61, 67 (E.D.N.Y.1994).

In light of this precedent, it is without question that both Portnoff and Schmidt are proper Defendants in this action. *See Piper*, 274 F.Supp.2d at 689–90 (citing precedent and finding Schmidt and Portnoff jointly and severally liable with PLA on similar facts). Defendant Portnoff, the President of PLA whose duties include supervising the staff and the overall operations of the firm, occupies the precise position that the *Pollice* court held was exposed to individual FDCPA liability—that of a partner who exercises control over the affairs of a partnership that qualifies as a debt collector. Likewise, Defendant Schmidt, as the attorney who signed—or directed others to sign in her name—many of the communications at issue that were sent by PLA to the Plaintiff, is in a similar situation to the defendants in *Teng*. She both acted as a debt collector within the meaning of the Act and took affirmative actions with respect to Plaintiff's account. As a result, this court holds that Defendants Portnoff and Schmidt can be subject to individual liability under the FDCPA.[14]

---

**13.** As set forth in Subsection C *supra,* the FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

**14.** Defendants also submit that the individuals Portnoff and Schmidt should be dismissed from the case because the FDCPA prohibits recovery against multiple defendants. In support of that contention, however, they offer little more than broad policy arguments and inapposite cases—none of which convince the court to abandon its holding in *Piper* that PLA, Schmidt, and Portnoff are all debt col-

E. *Trash Fees as Debts*

 Unlike their prior arguments, Defendants' contention that they cannot be held liable under the FDCPA because the municipal trash assessments at issue here do not qualify as "debts" within its meaning—but instead are more akin to a per capita tax—cannot be evaluated at the summary judgment stage.

The FDCPA only authorizes a cause of action incident to the collection of a debt, which is defined by the Act as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

In interpreting Section 1692a(5), the Third Circuit has drawn a distinction between an obligation to pay a per capita tax—which does not qualify as a debt—and an obligation to pay money as the result of a pro tanto exchange—which does. *Pollice,* 225 F.3d at 400–02; *Staub v. Harris,* 626 F.2d 275, 277–78 (3d Cir. 1980). Other courts have agreed with this result, applying the same dichotomy in order to categorize a host of various payment obligations. *See, e.g., Beggs v. Rossi,* 145 F.3d 511, 512 (2d Cir.1998) (relying on *Staub* and finding that personal property taxes were akin to a per capita tax and, therefore, collection of same was not subject to the FDCPA); *Agosta v. InoVision, Inc.,* 2003 WL 23009357, at *6 n. 9 (E.D.Pa. Dec.16, 2003) (citing *Pollice* and explaining that plaintiff's disputed utility account with PECO constituted a debt because it arose out of a transaction for household purposes); *Piper,* 262 F.Supp.2d at 526 (citing *Staub* and *Pollice* and finding that delinquent water assess-ments resulted from a pro tanto exchange because water bills varied with usage, and, therefore, qualified as debts); *Clay v. Melchionne,* 2000 WL 1838368, at *2 (D.Conn. Dec.7, 2000) (discussing *Staub* and *Pollice* and holding that water usage fee owed to municipality was a debt under the FDCPA); *Azar v. Hayter,* 874 F.Supp. 1314, 1318–19 (N.D.Fla.1995) (citing *Staub* and explaining that condominium association fees assessed to all owners for costs of maintenance of common areas, absent evidence of a pro tanto exchange, were not debts).

In *Staub,* the Third Circuit considered whether a per capita tax levied by a Pennsylvania taxing district was a debt within the meaning of Section 1692a(5). 626 F.2d at 276. The court answered that question in the negative, explaining its rationale in two important ways. First, although the court declined to explicitly decide whether the FDCPA's definition of transaction required the existence of an underlying contractual relationship, it did shed some light on its understanding of that definition. As the court wrote, "We believe that, at a minimum, the statute contemplates that the debt has arisen as a result of the rendition of a service or purchase of property or other item of value. The relationship between taxpayer and taxing authority does not encompass that type of pro tanto exchange which the statutory definition envisages." *Id.* Second, the court explained the requirement that the transaction be one whose subject is "primarily for personal, family, or household purposes" when it opined, "Taxes are used for more general purposes; they are not limited to the statutory purposes. They provide for such nonpersonal purposes as prisons, roads, defense, courts and other governmental services." *Id.* Twenty years later, in *Pollice,* the Third Circuit was called

lectors—and, as such, all liable—under the FDCPA. 274 F.Supp.2d at 689–90.

upon to consider whether overdue property taxes, water bills, and sewer bills—owed by homeowners to the City of Pittsburgh—constituted debts under the Act. 225 F.3d at 385. The court explained that, "In our view, the plain meaning of Section 1692a(5) indicates that a 'debt' is created whenever a consumer is obligated to pay money as a result of a transaction whose subject is primarily for personal, family or household purposes." *Id.* at 401. As such, the court drew a distinction between the water and sewer bills on the one hand, and the property taxes, on the other.

The *Pollice* court found that the water and sewer bills qualified as debts because "at the time these obligations first arose, homeowners ('consumers' of water and sewer services) had an 'obligation . . . to pay money' to the government entities which arose out of a 'transaction' (requesting water and sewer service) the subject of which was 'services . . . primarily for personal, family or household purposes.'" By contrast, the court found that the property taxes did not qualify as debts because they did not arise out of a transaction. The court explained, "[T]he property taxes at issue here arose not from the purchase of property, [a transaction], but from the *fact of ownership.*" *Id.* at 402 (emphasis in original).

Defendants contend that the trash fees charged by the Township are more akin to a per capita tax because they are automatically charged annually to all residential units and must be paid by each occupant, regardless of the extent to which he or she uses the trash collection services provided. Plaintiff counters by arguing that his obligation arose out of a transaction, the object of which was trash collection—a specific, household service

Based on the foregoing authority, this court finds that conflicting inferences can be drawn on the issue of whether the trash fee in this case contemplates a transaction or arises from the fact of ownership. On the one hand, a specific service is rendered. On the other hand, the obligation seems to arise from the fact of ownership and does not depend on the amount of usage or, indeed, the fact of usage. The present record does not provide facts clear enough to resolve this conflict. Thus, summary judgment is not appropriate, and discovery on this issue shall proceed. *See Ideal Dairy Farms,* 90 F.3d at 744.

## F. *Specific FDCPA Violations*

■■■■ Plaintiff contends that PLA's letters and the notices dated August 27, 2002, November 4, 2002, December 4, 2002, January 23, 2003, March 7, 2003, all violated Section 1692e(11) of the FDCPA. That section provides that a debt collector must disclose to the consumer from whom it seeks to collect—in the initial communication, as well as in subsequent communications—that the communication was sent by a debt collector in an attempt to collect a debt. *See supra* note 5. Because Defendants did not make such a disclosure in any of these communications, the court finds that, in the event that the FDCPA is found to apply to Defendants' collection activities in this case, Defendants violated Section 1692e(11). Plaintiff's claim that the September 4, 2003 communication also violates this section, however, must fail because this requirement does not apply to formal pleadings made in connection with a legal action, and a Praecipe for Writ of Execution is such a pleading. *See* 15 U.S.C. § 1692e(11).

Plaintiff also maintains that the letters dated August 27, 2002 and November 4, 2002, violate section 1692g of the FDCPA, which mandates that the debt collector included certain debt verification and validation information to consumers from whom they seek to collect. *See supra* note 5. The court finds that these two communi-

cations failed to meet the requirements of the FDCPA and, as such, if that statute is found to apply, Defendants can be held liable for such violations.

### G. *Counts III–V*

 In addition to their arguments concerning FDCPA liability, Defendants also assert that this court must dismiss Plaintiff's claims for requiring a debtor to pay excessive costs in violation of 41 Pa. Stat. Ann. §§ 501, 502 (Plaintiff's Complaint, Count III), imposition of an illegal penalty (Count IV), and unjust enrichment (Count V) because such claims are without a legal basis.[15] Defendants contend that because the MCTLA allows for the imposition of charges, expenses, and fees (including reasonable attorney's fees) in connection with proceedings to collect on delinquent accounts, Plaintiff's "general allegation that PLA is not permitted to assess attorney's fees under the MCTLA is without legal basis." This argument, however, misses the mark.

The Plaintiff does not submit that PLA cannot charge attorney's fees—he concedes that it can—but instead merely challenges the reasonableness of those fees. *See* 53 P.S. § 7106(a.1) ("It is not the intent of this subsection to require owners to pay, or municipalities to sanction, inappropriate or unreasonable attorney fees, charges or expenses for routine functions."). As such, if Plaintiff's allegations that PLA's fees were unreasonable are true, he would be entitled to the relief requested in Counts III–V. Thus, Defendants' argument in support of dismissal of these claims is rejected.

---

**15.** Although not cited, Defendants seem to move for dismissal of Counts III–V pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. The court can only grant a motion to dismiss pursuant to this rule if, accepting all well-

### III. *Conclusion*

For the foregoing reasons, the Parties' Cross Motions for Summary Judgment are denied. Discovery on the issue of whether trash fees constitute debts under *Pollice,* or taxes under *Staub,* shall proceed.

### ORDER

**AND NOW,** this 16th day of January, 2004, upon consideration of the Plaintiff's Motion for Summary Judgment on Liability and the Defendants' Motion for Summary Judgment, and the responses thereto, it is hereby **ORDERED** that said Motions are **DENIED.**

pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, it finds that the plaintiff would not be entitled to relief. *Oatway v. Am. Int'l Group, Inc.,* 325 F.3d 184, 187 (3d Cir.2003)